**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>LIBERTY BRIDGE CAPITAL<br>MANAGEMENT GP, LLC, *et al.*, [1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 20-10009 (SCC)<br><br>(Jointly Administered) |
| US CLAIMS OPCO LLC,<br><br>      Plaintiff,<br><br>v.<br><br>KENNETH P. SILVERMAN, SOLEY IN HIS<br>CAPACITY AS CHAPTER 7 TRUSTEE FOR<br>THE DEBTORS' JOINTLY ADMINISTERED<br>BANKRUPTCY ESTATES; LENDERS<br>FUNDING LLC; BCP SPECIAL<br>OPPORTUNITIES FUND I HOLDINGS LP;<br>PRISM ALT INCOME FUND, LLC; CAMILLE<br>RAIA; MULTI FUNDING INC.; PIERCE III<br>LLC; SOUTH AVE CAPITAL LITIGATION<br>FUNDING I LLC; COOP CAPITAL LLC,<br><br>      Defendants. | Adv. Pro. No. 20-_____ (SCC) |

## ADVERSARY COMPLAINT

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Liberty Bridge Capital Management GP, LLC (9236) (Case No. 20-10009); (ii) Cash4Cases, Inc. (8244) (Case No. 20-10010); (iii) Liberty Bridge Capital Management IM, LLC (2955) (Case No. 20-10011); (iv) Liberty Bridge Settlement Clearing, LLC (8144) (Case No. 20-10012); (v) Liberty Bridge Finco LLC (5215) (Case No. 20-10013); (vi) Liberty Bridge Capital Management, L.P. (6434) (Case No. 20-10014); (vii) Diversified PreSettlement Portfolio I, a Series of Liberty Bridge Capital Management, L.P. (1925) (Case No. 20-10015); and (viii) Diversified Pre-Settlement Portfolio II, a Series of Liberty Bridge Capital Management, L.P. (1660) (Case No. 20-10016).

US Claims OPCO LLC ("**USC**" or "**Plaintiff**"), by and through its undersigned counsel, files this Adversary Complaint (the "**Complaint**") against the above-captioned defendants (collectively, the **Defendants**") pursuant to 28 U.S.C. § 2201 *et seq.,* 11 U.S.C. §§ 105(a) and 541, and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"). In support of the Complaint, USC states as follows:

## INTRODUCTION[2]

1.     USC is a leading provider of non-recourse litigation funding to plaintiffs in personal injury lawsuits, before their claims have been finally resolved through a settlement or judgment.  Pre-settlement funding allows personal injury plaintiffs to, among other things, pay expenses, manage cash flow, and secure medical care while awaiting the resolution of their claims.  The funding is provided to plaintiffs via non-recourse cash advance contracts, by which the funding party obtains an ownership interest in all or a portion of the plaintiff's interests in the proceeds of his or her personal injury claims.  The non-recourse cash advance contracts, also referred to as "funding agreements", are typically freely assignable by the funding party, and there is a robust secondary market for the purchase and sale of these contracts.

2.     Prior to their bankruptcy filings, the Debtors also were in the pre-settlement litigation funding business.  In addition to financing their businesses through traditional lending facilities, the Debtors procured cash by selling funding agreements they originated on the secondary market.  As discussed below, however, prior to the Petition Date, the Debtors, through their principal owner, engaged in various fraudulent activity, including, for example, "double selling" funding agreements to more than one buyer.  Also, the Debtors defrauded certain lenders

---

[2] Capitalized terms used but not defined in this introduction are defined elsewhere in the Complaint.

or other investors by purporting to grant them security interests in funding agreements that they had already sold on the secondary market.

3.        Prior to the Petition Date, the Plaintiff purchased approximately 200 plaintiff funding agreements (defined below more particularly as the USC Funding Agreements) from certain of the Debtors, representing approximately $11.5 million in aggregate non-recourse advances made by such Debtors to lawsuit plaintiffs.  The Plaintiff asserts that it owns the USC Funding Agreements and, of course, any and all derivative claim proceeds that have been collected pre-petition by the Debtors or post-petition by the Trustee (defined below more particularly as the USC Claim Proceeds).  The Defendants have asserted either ownership and/or security interests in some or all of the USC Funding Agreements and/or USC Claim Proceeds.

4.        Through this adversary proceeding, the Plaintiff seeks, among other relief, a judgment declaring and determining, pursuant to sections 105 and 541 of title 11 of the United States Code (the "**Bankruptcy Code**") and Bankruptcy Rule 7001, that: (a) the USC Funding Agreements and USC Claim Proceeds belong to USC and are not property of the Debtors' estates; and, relatedly, (b) the Defendants' purported interests in the USC Assets are either invalid or are subordinate to Plaintiff's ownership interests therein.

5.        In addition, the Plaintiff seeks an order of the Court: (a) directing the Trustee to turnover to the Plaintiff any and all USC Claim Proceeds that are in the Trustee Accounts or are otherwise in the Trustee's possession, custody or control; (b) terminating the Trustee's authority under the Operations Order with respect to any Unresolved USC Funding Agreements; and (c) directing the Trustee to cooperate with USC as necessary to transition full control, possession, and authority over the USC Assets to USC, including, without limitation, by identifying any law

firm payors and any other parties that are involved in the collection and/or disbursement of the proceeds of the USC Assets.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 157 and 1334.

7.      Venue in this Court is proper pursuant to 28 U.S.C. § 1409 because this proceeding arises in or is related to a cause under the Bankruptcy Code that is pending in this District.

8.      This is a core proceeding under 28 U.S.C. § 157(b).  Furthermore, the Debtor consents to entry of a final order or judgment by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

**A.      The Parties**

9.      The debtors (collectively, the "**Debtors**") in the above-captioned jointly administered chapter 7 cases (the "**Chapter 7 Cases**") are Liberty Bridge Capital Management GP, LLC ("**LBCM GP**"), Cash4Cases, Inc. ("**C4C**"), Liberty Bridge Capital Management LP ("**LBCM LP**"), Diversified PreSettlement Portfolio I, a Series of Liberty Bridge Capital Management, L.P. ("**Diversified I**"), Diversified Pre-Settlement Portfolio II, a series of Liberty Bridge Capital Management LP ("**Diversified II**"), Liberty Bridge Capital Management IM, LLC ("**LBCM IM**"), Liberty Bridge Settlement Clearing ("**LBSC**"), and Liberty Bridge Finco LLC ("**Finco**").

60558/0001-19988448v2

10.     Defendant Kenneth P. Silverman is the chapter 7 trustee (the "**Trustee**") of the Debtors' estates (collectively, the "**Estates**") in the Chapter 7 Cases.

11.     Upon information and belief, defendant Lenders Funding LLC ("**Lenders Funding**"), a New York limited liability company, loaned money to one or more of the Debtors prior to the Petition Date.

12.     Upon information and belief, defendant BCP Special Opportunities Fund I Holdings LP ("**BCP**"), a Delaware limited partnership, loaned money to one or more of the Debtors prior to the Petition Date.

13.     Upon information and belief, defendant Prism Alt Income Fund, LLC ("**Prism**"), a Delaware limited liability company, loaned money to one or more of the Debtors prior to the Petition Date.

14.     Upon information and belief, defendant Camille Raia ("**Raia**"), an individual, loaned money to one or more of the Debtors as of the Petition Date.

15.     Upon information and belief, defendant Multi Funding Inc. ("**Multi Funding**"), a New York corporation, is or was in the litigation funding business.  Multi Funding asserts that it purchased plaintiff funding agreements from certain of the Debtors prior to the Petition Date.

16.     Upon information and belief, defendant Pierce III LLC ("**Pierce**"), a Delaware limited liability company, is or was in the litigation funding business.  Pierce asserts that it purchased plaintiff funding agreements from certain of the Debtors prior to the Petition Date.

17.     Upon information and belief, Defendant South Ave Capital Funding I LLC ("**South Ave**"), a New York corporation, is or was in the litigation funding business.  South Ave asserts that it purchased plaintiff funding agreements from certain of the Debtors prior to the Petition Date.

60558/0001-19988448v2

18.    Upon information and belief, CoOp Capital LLC ("**CoOp Capital**") was a creditor of one or more of the Debtors prior to the Petition Date.

**B.    The Plaintiff's Pre-Petition Acquisition of All the Debtors' Interests in Certain Funding Agreements.**

19.    Prior to Petition Date, certain of the Debtors, including C4C, LBCM, and Diversified II, provided pre-settlement (or pre-judgment) litigation advances to personal injury claimants (the "**PI Claimants**") in pending lawsuits (the "**Actions**") via non-recourse cash advance contracts (the "**Funding Agreements**").

20.    Under each Funding Agreement, the Debtors paid to the PI Claimant an agreed-upon cash advance (the "**Advance**"), in exchange for which the PI Claimant unconditionally and irrevocably sold and conveyed to the Debtors all or a portion of the PI Claimant's right, title and interest in and to the proceeds of the PI Claimant's claim(s) (the "**PI Claim**") in an Action, to the extent such proceeds materialize.

21.    The PI Claimants are obligated under the Funding Agreements to, among other things, turnover to the Debtors (or the successor-in-interest to the Funding Agreement) the proceeds of the their PI Claims and other fees or amounts that the Debtors (or the successor-in-interest to the Funding Agreement) own and are entitled to under the applicable Funding Agreements (collectively, the "**Claim Proceeds**").

22.    Each of the Funding Agreements expressly grants the Debtor-counterparty (or the Debtor's successor-in-interest to the Funding Agreement) the absolute right to sell and assign all of its rights, title and interests in, to and under the Funding Agreement, including the Claim Proceeds, without the PI Claimant's approval.

23.    As more particularly described in Exhibit "A" and Exhibit "B" hereto, from December 2018 through August 2019, USC executed a series of twenty-one Purchase and

Assignment Agreements (the "**Sale Agreements**") with certain of the Debtors, pursuant to which each Debtor indefeasibly sold and assigned to USC, in exchange for good and valuable consideration paid by USC to that Debtor, all of such Debtor's rights, title and interests in and to approximately 200 Funding Agreements (the "**USC Funding Agreements**"), representing approximately $11.5 million in aggregate Advances made by the Debtors to an equal number of PI Claimants in pending Actions.

24.      More particularly, as identified in Exhibits "A" and "B", USC executed nineteen Sale Agreements with C4C, two with LBCM LP, and two with Diversified II.  Each Sale Agreement encompassed a group of USC Funding Agreements that were scheduled and attached to each Sale Agreement.  In each Sale Agreement, the Debtor-counterparty thereto expressly acknowledged that, as of the effective date of each Sale Agreement, the Debtor "will have no rights under the Funding Agreements."

25.      Each Sale Agreement expressly requires the Debtor-counterparty thereto to instruct all PI Claimants and/or their counsel (as applicable) to send all Claim Proceeds due under the Funding Agreements directly to USC.  Furthermore, in the event the Debtor receives payment relating to a USC Funding Agreement, the Sale Agreement requires "such funds . . . to be immediately sent to USC."  Furthermore, pending transmittal of such funds to USC, each Sale Agreement expressly requires the Debtor to segregate the funds and "***hold such payment in express trust for***" USC.

26.      In the event the Debtors "receive any communication from an attorney or firm regarding the litigation underlying a Funding Agreement," the Debtors are required under the Sale Agreements to "promptly forward any such written communication to USC."  Further, the Sale

Agreements grant USC the right to contact the PI Claimants or their attorneys or any related party

"for case updates, collection status or any other matter relating to the Funding Agreements."

27.    Moreover, the USC Funding Agreements themselves grant USC, as the applicable

Debtor's successor-in-interest thereto, the rights to, *inter alia*, issue notices of assignment, as

necessary and appropriate, to inform third parties, including PI Claimants and/or their counsel (as

well as any other party that is involved in the collection and/or disbursement of the Claims

Proceeds) to direct payments under the USC Funding Agreements to be made to USC, as the

holder of all legal and equitable title to such amounts under the USC Funding Agreements.

**B.    The Debtors' Pre-Petition Breaches, Malfeasance, and Fraudulent Activity.**

28.    Following execution of the Sale Agreements, C4C, LBCM LP, and Diversified II

and or their respective agents or representatives, as applicable, received payments of Claim

Proceeds from PI Claimants in connection with certain USC Funding Agreements, which they

were obligated to turnover to the Plaintiff.

29.    The Debtors breached their fiduciary duties and other obligations to the Plaintiff

under the Sale Agreements by, among other things, failing to turnover Claims Proceeds they

received under the USC Funding Agreements to the Plaintiff and deliberately and repeatedly

misleading the Plaintiff regarding the status of the underlying Actions.  Upon information and

belief, the Debtors collected approximately $6,272,100.09 in Claim Proceeds in connection with

USC Funding Agreements, which the Debtors failed to turn over to the Plaintiff and remained in

the Debtors' bank accounts as of the bankruptcy filings in express trust for Plaintiff's benefit.

30.    Additionally, in the months leading up to the Debtors' bankruptcy filings (and

possibly longer), the Plaintiff and certain of the Debtors' lenders discovered that the Debtors,

through their principal, Jaeson Birnbaum ("**Birnbaum**"), had been fraudulently selling and/or

granting security interests in Funding Agreements, which had already been sold and in which the

Debtors lacked any interest to sell or encumber, to other pre-settlement litigation funders and/or

lenders.

31.    Following the discovery of the Debtors' fraudulent activity, and a result thereof,

in November 2019, the Plaintiff and certain of the Debtors' lenders, including defendants Prism

and BCP (collectively, the "**Funding Parties**"), all of which asserted rights and remedies under

their respective contracts with the Debtors, entered into a standstill arrangement (the "**Standstill**")

with respect to the enforcement of their respective asserted rights and remedies.

32.    In connection with the Standstill, the Funding Parties, with Birnbaum's

compliance, installed an independent third party to serve as Chief Restructuring Officer (the

"**CRO**") of the Debtors in order to, among other things, prevent any further malfeasance by

Birnbaum and assist with determining which of the Debtors' assets had been improperly sold or

encumbered.

33.    Pursuant to the Standstill, the Funding Parties agreed, among other things, to: (a)

forbear from exercising their asserted rights and remedies under their respective contracts so as to

permit the CRO to conduct and complete a forensic analysis of the Debtors' assets and liabilities;[3]

and (b) temporarily deposit all collections and other cash payments received by any Funding

Party in connection with any agreements with, or funding agreements originated by, the Debtors

into a lockbox and deposit account in LBSC's name maintained at Signature Bank (the "**Lockbox**

**Account**").[4]

---

[3] Upon information and belief, the CRO's forensic investigation of the Debtors remained incomplete and ongoing as of the Petition Date.

[4] Subject to and in reliance on the Standstill, the Plaintiff also agreed to, and did, "payoff" certain USC Funding Agreements which it already owned by transferring the full accreted value due thereunder into the Lockbox (continued…)

60558/0001-19988448v2

34.     BCP and Prism asserted an interest in the Lockbox Account as part of their respective lending arrangements with certain of the Debtors.  However, without acknowledging the extent or validity of BCP's or Prism's asserted interests, the Funding Parties acknowledged and agreed that the temporary use of the Lockbox Account for collections was merely a temporary accommodation under the circumstances and that all the Funding Parties' respective asserted rights, entitlement and remedies as to any funds deposited therein would be maintained and expressly preserved "as is" and "as was" prior to any deposit of the funds into the Lockbox Account.

35.     The Funding Parties unequivocally agreed that the transfer or deposit of any funds into the Lockbox Account by any Funding Party as contemplated by the Standstill would not, and was not intended to, create or result in a priority in the name of or in favor of any particular Funding Party and would not constitute, or be deemed to constitute, a waiver of any particular Funding Parties' asserted rights, remedies and/or entitlement to the deposited funds and against the Debtors, Birnbaum or any other Funding Party.

36.     Subject to and in reliance on the Standstill agreement, prior to the Petition Date, USC transferred approximately $504,866.55 into the Lockbox Account.  Altogether, upon information and belief, as of the bankruptcy filings, the Debtors maintained approximately $6,776,966.64 in Claim Proceeds relating to USC Funding Agreements in their pre-petition bank accounts (the "**Pre-Petition USC Claim Proceeds**"), all of which was held in trust for Plaintiff's benefit, as the holder of all legal and equitable title to such amounts under the USC Funding Agreements.

_____

(…continued)
Account, pending the CRO's investigation and determination or agreement by the Funding Parties regarding their rights and priorities to those Funding Agreements.

C.    **The Chapter 7 Cases**

37.    On January 3, 2020 (the "**Petition Date**"), the Debtors commenced the Chapter 7

Cases and, on the same day, the Trustee was appointed the interim chapter 7 trustee of the

Debtors' Estates.  The Trustee has since qualified as the permanent chapter 7 trustee and

continues to serve in that position.

38.    Upon information and belief, shortly after the Petition Date, the Trustee

transferred all of the funds in all the Debtors' bank accounts, including the Pre-Petition USC

Claim Proceeds, to various corresponding accounts maintained by the Trustee on behalf of the

Estates (the "**Trustee Accounts**").

39.    Upon information and belief, as of the Petition Date, there were approximately

110 USC Funding Agreements (corresponding to approximately $6 million in Advances made to

PI Claimants) in which the underlying Actions remained unresolved and/or for which the PI

Claimant-parties' thereto remained obligated to transfer or turnover Claim Proceeds due

thereunder to USC (the "**Unresolved USC Funding Agreements**").

40.    On March 12, 2020, the Court entered an *Order Granting Trustee (I) Authority,*

*Pursuant to 11 U.S.C. § 721, to Operate Debtors' Business on a Limited Basis and (II)*

*Establishing Procedures Pursuant to 11 U.S.C. §105(A) and Rule 9019(B) of the Federal Rules of*

*Bankruptcy Procedure for the Settlement of Litigation Advances for the Benefit Of Debtors'*

*Estates*, dated March 12, 2020 [Docket No. 52] (the "**Operations Order**"), authorizing the

Trustee to operate the Debtors' businesses for the limited purpose of effectuating "Settlements"

(as defined in the Operations Order), including collection of amounts owed in connection with

Funding Agreements originated by the Debtors, subject to and pending the adjudication any

11

interested parties' asserted rights and interests thereto (as more fully set forth in the Operations Order).

41.      Since the Petition Date and pursuant to the Operations Order, Trustee has settled and accepted payoffs from PI Claimants in connection with certain Unresolved USC Funding Agreements or otherwise collected and deposited Claim Proceeds derived from USC Funding Agreements into the Trustee Accounts nominally corresponding to the Debtors' pre-petition accounts (the "**Post-Petition USC Claim Proceeds**").[5]  All Claim Proceeds and other amounts collected on account of the USC Funding Agreements, including any and all Pre-Petition USC Claim Proceeds and Post-Petition USC Claim Proceeds are referred to herein as the "**USC Claim Proceeds**" and, together with the USC Funding Agreements, the "**USC Assets.**"

42.      Attached hereto as Exhibits "A" and "B" are schedules identifying the USC Funding Agreements, organized by PI Claimant, and reflecting, among other details, the date of the corresponding Sale Agreement pursuant to which USC purchased each USC Funding Agreement, and the amount of the Debtors' Advance under each USC Funding Agreement.  More particularly, Exhibit "A" reflects, upon information and belief, the Unresolved USC Funding Agreements as of the filing of this proceeding.  Exhibit "B" reflects, upon information and belief, the USC Funding Agreements for which all USC Claim Proceeds due thereunder have been collected and are being maintained by the Trustee in the Trustee Accounts.

---

[5] Post-Petition USC Claim Proceeds include amounts which, as further set forth below, the Plaintiff transferred to the Trustee, by agreement with the Trustee and subject to and under compulsion of the Operations Order, with the understanding that such funds will be returned to the Plaintiff pending adjudication or other agreement regarding the Plaintiff's rights thereto.

60558/0001-19988448v2

## CAUSES OF ACTION

### COUNT ONE
**(Declaratory Judgment under Bankruptcy Code Section 541 that the USC Funding Agreements Belong to USC and are not Property of the Debtors' Estates)**

43.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

44.    Bankruptcy Code section 541(a) defines "property of the estate" as including "all legal or equitable interests of the debtor[s] in property as of the commencement of the case."

45.    The extent of the Debtors' interests in the USC Funding Agreements as of the Petition Date is determined by applicable state law.

46.    Plaintiff's ownership interests in the USC Funding Agreements were created pursuant the Sale Agreements, which are governed by Florida law.

47.    Prior to the Petition Date, pursuant to and as of the execution of each of the Sale Agreements, C4C, LBCM LP, and Diversified II duly transferred to USC all of their respective rights, interests and title in, to, and under the USC Funding Agreements, as more particularly described in Exhibits "A" and "B" hereto.

48.    Accordingly, Plaintiff holds all the legal and equitable interests in the USC Funding Agreements.

49.    Because the Debtors have no legal or equitable interests in the USC Funding Agreements, the USC Funding Agreements are not property of the Estates within the meaning of Bankruptcy Code section 541.

50.    Because the USC Funding Agreements are not property of the Debtors' Estates, all the Trustee's authority under that the Operations Order with respect any Unresolved USC Funding Agreements should be terminated, and Plaintiff should be permitted to exercise all of its rights and remedies under any Unresolved USC Funding Agreements.

13

51.    Upon information and belief, at least one or more of the Defendants assert that certain of the USC Funding Agreements are property of the Estates and/or are not owned by Plaintiff.  Accordingly, this matter presents a "case of actual controversy" that is ripe for consideration under 28 U.S.C. §§ 2201 and 2202.

52.    A judicial declaration is necessary and appropriate at this time to (a) establish that the USC Funding Agreements belong to Plaintiff and do not constitute property of the Debtors' Estates, (b) terminate the Trustee' authority under the Operations Order with respect to any Unresolved USC Funding Agreements, and (c) confirm that Plaintiff may exercise all of its rights and remedies under any Unresolved USC Funding Agreements.

### COUNT TWO
**(Declaratory Judgment under Bankruptcy Code Section 541(d) and
Enforcement of Express Trust Over the USC Claim Proceeds)**

53.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of the Complaint as if fully set forth herein.

54.    Bankruptcy Code section 541(d) provides, in relevant part, as follows:

Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

55.    Applicable state law determines the extent of the Debtors' interests in property.

56.    Pursuant to and as result of the applicable Debtors' execution of the Sale Agreements, the Estates either lack any interest in the USC Claim Proceeds or hold, at most, no more than legal title to any US Claim Proceeds maintained in the Trustee Accounts.

57.    As set forth above, the Plaintiff holds all the legal and equitable interests in the USC Funding Agreements identified in Exhibits "A" and "B" hereto, including any USC Claim

14

Proceeds derived or collected in connection therewith.

58.    The Sale Agreements require the Debtors "to instruct any lawyer or payor to send all amounts owed pursuant to the Funding Agreements [purchased by USC thereunder]" directly to USC, and "in the event [the Debtor] receive any such payment, such funds are to be immediately sent to USC[.]"

59.    Furthermore, the Sale Agreements provide that "[i]f [the Debtor] or its agents or representatives shall at any time receive any cash, checks or other payments attributable to a Funding Agreements [sold to USC thereunder], such recipient shall segregate such payment and **shall hold such payment in express trust for and in a manner acceptable to USC** and shall, promptly upon receipt (and in any event within five business days following receipt), remit all such cash, checks and/or other instruments, duly endorsed or with duly executed instruments of transfer, to USC." (Emphasis added.)

60.    Furthermore, the Court's Operations Order provides, in pertinent part, that any "claims of ownership to, or other interests or claims (collectively, 'Interests') in any Litigation Advance or the Settlement Proceeds collected by the Trustee since the Petition Date shall attach to the Settlement Proceeds in the same order of priority, with the same validity, force and effect, that such Interests had" as of the Petition Date.  (Operations Order at ¶ 5).

61.    Furthermore, the Operations Order provides that, as an "Interested Party," USC's claim to any and all USC Claim Proceeds collected by the Trustee since the Petition Date "is preserved 'as is' as of the Petition Date (with the same order of priority and the same validity, force and effect, that such Interests had as of the Petition Date) and neither the collection or transfers of funds, nor the maintenance or management of the funds or the bank accounts by the Trustee or his professionals, nor the collections of any proceeds or products of the Funding

60558/0001-19988448v2

Documents relating to the Litigation Advances by the Trustee or his professionals shall be deemed a waiver by, or shall adversely impact or affect, in any manner whatsoever, the Interested Parties' or any other creditors' respective rights, claims and Interests." (Operations Order at ¶ 6.)

62.     In an accordance with the express terms of the Sale Agreements, any and all USC Claim Proceeds in the Debtors' possession, custody or control prior to the Petition Date were held in express trust for Plaintiff.  Likewise, any and all USC Claim Proceeds maintained in the Trustee Accounts, whether transferred from the Debtors' pre-petition accounts or collected and deposited by the Trustee post-petition, are subject to and continue to be held in express trust for Plaintiff.

63.     As the holder of all legal and equitable interests and title to the USC Funding Agreements, and sole beneficiary of the express trust over the USC Claim Proceeds created under the Sale Agreements, the Plaintiff owns and is entitled to payment and recovery of any and all USC Claim Proceeds, whether collected by the Debtors pre-petition or the Trustee post-petition.

64.     The Trustee is obligated to transfer and remit any and all USC Claim Proceeds in the Trustee Accounts, or otherwise in his possession, custody and control, to the Plaintiff.

65.     Upon information and belief, at least one or more of the Defendants assert that the USC Claims Proceeds are property of the Debtors' Estates, do not belong to Plaintiff, and/or that Plaintiff is not entitled to payment of the USC Claims Proceeds.

66.     The facts stated above establish that this matter presents a "case of actual controversy" that is ripe for consideration under 28 U.S.C. § 2201 *et seq.*

67.     A judicial declaration is necessary and appropriate at this time to establish that the USC Claim Proceeds belong to Plaintiff, do not constitute property of the Debtors' Estates, and must be transferred to the Plaintiff.

60558/0001-19988448v2

## COUNT THREE
### (Breach of Fiduciary Duties and Imposition of a
### Constructive or Resulting Trust Over the USC Claim Proceeds)

68.    Plaintiff repeats and realleges the allegations contained in the preceding

paragraphs of the Complaint as if fully set forth herein.

69.    In the litigation funding industry, personal injury claimant referrals and

originations are commonly referred to a litigation funder by personal injury lawyers and their

firms.  Given that the Debtors and Plaintiff were both in the pre-settlement funding business and

were essentially competitors, the Debtors sought to maintain their valuable relationships with PI

Claimants' law firms.  Plaintiff allowed Debtors limited permission to "service" and receive

collections on USC Funding Agreements so that the Debtors could preserve their relationships

with certain law firms, but only subject to and in reliance on the strict conditions, representations

and fiduciary obligations of the Debtors to Plaintiff as set forth in the Sale Agreements.

70.    In entering into the Sale Agreements and purchasing the USC Funding

Agreements from the Debtors, Plaintiff justifiably relied on the Debtors' promises and

representations that, if and when they received any USC Claim Proceeds, they would honor and

comply with their fiduciary obligations, as set forth in the Sale Agreements, and transfer the

proceeds to Plaintiff.

71.    At all times that the Debtors received USC Claim Proceeds prior to the Petition

Date, a fiduciary relationship existed between Plaintiff and the Debtors (*i.e.*, C4C, LBCM LP, and

Diversified II, as applicable) to hold in trust any and all USC Claim Proceeds they received for

purposes of conveying such funds to Plaintiff.

72.    Plaintiff permitted the Debtors to receive USC Claims Proceeds from PI

Claimants or their law firm payors in reliance on the Debtors' promise and fiduciary obligations

60558/0001-19988448v2

to reconvey such proceeds to Plaintiff.  Had the Debtors not made such promises, Plaintiff either

would not have entered into the Sale Agreements or would have immediately, upon

consummation of the sales, exercised its rights under the Sale Agreements and USC Funding

Agreements to, among other things, issue notices of assignments to the PI Claimants (and their

law firms) so as to "service" its assets directly with PI Claimants and their law firms and collect

all USC Claim Proceeds in connection therewith.

73.    The Debtors had breached their fiduciary obligations to Plaintiff by, among other

things, failing to turnover USC Claim Proceeds to the Plaintiff.

74.    The Plaintiff has been damaged by the Debtors' pre-petition breaches of their

fiduciary obligations to the Plaintiff, which proximately caused Plaintiff's injuries.

75.    The Defendants and the Estates would be unjustly enriched if the Trustee were

not required to remit any and all USC Claim Proceeds to the Plaintiff.

76.    The parties to the Sale Agreements intended, and indeed the Sale Agreements

expressly provide, that if the Debtors received any USC Claims Proceeds then the Debtors would

only, at most, hold legal title to the funds with all the beneficial and equitable ownership of the

funds to be held by USC.

77.    The Plaintiff should be awarded damages in the amount of the Pre-Petition USC

Claim Proceeds and a constructive or resulting trust in Plaintiff's favor should be imposed upon

cash in the Trustee Accounts in the amount of the Pre-Petition USC Claim Proceeds.

## COUNT FOUR
**(Declaratory Judgment That the Defendants' Asserted Equity or Security Interests in the
USC Assets Are Either Invalid, Void or Are Subordinate to That of the Plaintiff's
Ownership Interests Therein)**

78.    Plaintiff repeats and realleges the allegations contained in the preceding

paragraphs of the Complaint as if fully set forth herein.

18

79.    Upon information and belief, one or more of the Defendants purport to hold an interest in certain of the USC Assets and/or dispute the Plaintiff's entitlement to the USC Assets and the relief sought in this Complaint.

80.    The facts stated above establish that this matter presents a "case of actual controversy" that is ripe for consideration under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

81.    A judicial declaration is necessary and appropriate at this time to establish that Plaintiff's ownership interests in the USC Assets is superior to and take priority over any other purported interest in the USC Assets allegedly held by the Defendants.

**WHEREFORE**, the Plaintiff seeks judgment in Plaintiff's favor and against the Defendants as follows:

a.    As to Count One of the Complaint, Plaintiff prays for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2201, as follows:

    i.    establishing that the USC Funding Agreements belong to USC and do not constitute property of the Estates and

    ii.    confirming that USC may exercise all of its rights and remedies under any Unresolved USC Funding Agreements.

b.    As to Count Two of the Complaint, Plaintiff prays for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2201, as follows:

    i.    A judgment in Plaintiff's favor finding that any and all USC Claim Proceeds in the Trustee's Accounts (or otherwise in the Trustee's possession custody or control) belong to the Plaintiff, are not property of the Estates, and must be transferred to the Plaintiff.

    c.      As to Count Three of the Complaint, Plaintiff prays for the following relief:

        i.      A judgment in Plaintiff's favor finding that, prior to the Petition Date, C4C, LBCM LP, and Diversified II breached their fiduciary obligations to Plaintiff by failing to turn over USC Claim Proceeds to the Plaintiff;

        ii.      An award of damages in the Plaintiff's favor in the amount of the Pre-Petition USC Claim Proceeds; and

        iii.      Imposition of a constructive or resulting trust upon cash in the Trustee Accounts in the amount of the Pre-Petition USC Claim Proceeds.

    d.      Plaintiff further seeks an order of this Court:

        i.      directing the Trustee to turnover to Plaintiff any and all USC Claim Proceeds in the Trustee Accounts or which are otherwise in the Trustee's possession, custody or control;

        ii.      terminating the Trustee's authority under the Operations Order with respect to any Unresolved USC Funding Agreements; and

        iii.      directing the Trustee to cooperate with USC as necessary to transition full control, possession, and authority over the USC Assets to USC, including, without limitation, by providing USC with documents and information relating to the USC Assets and identifying any law firm payors and any other party which are involved in the collection and/or disbursement of the proceeds of the USC Assets.

    e.      Such other and further relief, at law or in equity, as the Court may deem just and proper under the circumstances.

Dated: April 7, 2020
    New York, New York

Respectfully submitted,

**COLE SCHOTZ P.C.**

By: /s/ *Steven L. Klepper*
Michael D. Sirota
Steven L. Klepper
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Telephone: (212) 752-8000

*Counsel to US Claims OPCO, LLC*

60558/0001-19988448v2