

UNITED STATES BANKRUPTCY COURT, SOUTHERN DISTRICT OF NEW YORK
In Re: Liberty Bridge Capital Management GP, LLC, *et al.* [1],
*Case No. 20-10009 (SCC)* (Jointly Administered)
Maltz Auctions, Inc. d/b/a Maltz Auctions | (t) 516.349.7022 |(f) 516.349.0105 |
(e) RemoteBidding@MaltzAuctions.com
**ONLINE BIDDING REGISTRATION –AUCTION**

---

**ALL PERSONAL INFORMATION ON THIS FORM MUST MATCH YOUR ONLINE BIDDING PROFILE**

Bidder Name: _____

Company Name (if applicable):_____  Title: _____

Phone Number:_____ Email Address: _____

Mailing Address: _____

Auction Date:  July 22, 2021 at 11:00 a.m.   Subject Description: Liberty Asset Auction

Deposit: You must submit a deposit prior to bidding. Checks must be made payable to "**Maltz Auctions, Inc.**"

Check Number: _____ (Reference "Liberty" & Bidder/Company Name)

How did you hear about this auction: _____

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Liberty Bridge Capital Management GP, LLC (9236)(Case No. 20-10009); (ii) Cash4Cases, Inc. (8244) (Case No. 20-10010); (iii) Liberty Bridge Capital Management IM, LLC (2955) (Case No. 20-10011); (iv) Liberty Bridge Capital Management, L.P. (6434) (Case No. 20-10012); (v) Liberty Bridge Finco LLC (5215)(Case No. 20-10013); (vi) Liberty Bridge Settlement Clearing, LLC (8144) (Case No. 20-10014); (vii) Diversified Pre-Settlement Portfolio I, a Series of Liberty Bridge Capital Management, L.P. (1925)(Case No.20-10015); and (viii) Diversified Pre Settlement Portfolio II, a Series of Liberty Bridge Capital Management, L.P. (1660)(Case No. 20-10016).

1

# TERMS AND CONDITIONS OF SALE

1. These terms and conditions of sale (the "Terms and Conditions of Sale") are promulgated in connection with the public auction sale (the "Auction") by Kenneth P. Silverman, Esq., the chapter 7 trustee (the "Trustee") of the jointly administered bankruptcy estates of Liberty Bridge Capital Management GP, LLC, *et al.* (collectively, the "Debtors"), Case No. 20-10009 (SCC), pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), of all of the Debtors' estates' right, title and interest in and to certain non-recourse, pre-settlement litigation advances made by the Debtors to permit personal injury litigants, during the pendency of such litigants action, to finance essential and basic living expenses and to subsidize unfunded medical costs associated with the prosecution of such litigations (the "Assets" and each a "Litigation Advance"). The Trustee's retained broker is Maltz Auctions, Inc. ("Maltz"), who can be contacted at:

> Maltz Auctions Inc.
> 39 Windsor Place
> Central Islip, New York 11722
> Attn: Richard Maltz (maltz@maltzauctions.com)
> Tel: (516) 349-7022; Fax: (516) 349-0105

2. The Assets are being sold in bulk "**AS IS**" "**WHERE IS**", "**WITH ALL FAULTS**", without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all liens, claims, encumbrances, security interests, claims of ownership, or other interests, claims or restrictions on transfer (collectively, the "Liens"), with such Liens, if any, to attach to the proceeds of the sale in the amount and priority as they currently exist.

3. In order to be permitted to bid on the Assets and be deemed a "Qualified Bidder", prior to the commencement of the Auction, each prospective bidder must: (i) sign and submit the online bidding registration (the "Bidding Registration"), the Terms & Conditions of Sale, a non-disclosure and confidentiality agreement (an "NDA"), and the Memorandum of Opening Bid (the "Memorandum of Opening Bid"); and (ii) remit to the Trustee a bank check or wire transfer in the amount of One Million and 00/100 ($1,000,000.00) Dollars (the "Qualifying Deposit") payable to "Kenneth P. Silverman, Esq. Chapter 7 Trustee". The Qualifying Deposit shall serve as a partial good faith deposit against payment of the purchase price, which shall be equal to the successful bid submitted at the conclusion of the Auction, by such competing bidder as the Trustee determines to have made the highest and/or best bid for the Assets (the "Successful Bidder").

4. The Auction will be conducted in the following two steps:

   **Step One - The Sealed Bid Process:**

   A. The Reserve Price: All Qualified Bidders will be provided with the amount of the minimum opening bid (the "Reserve Price") by no later than July 16, 2021, which amount shall be equal to 120% of the then principal value of the Assets.

2

B. Sealed Bids:  Qualified Bidders shall be required to, by no later than 4:00p.m. on July 19, 2021 (the "Sealed Bid Submission Deadline"), submit to Maltz and the Trustee a sealed and binding bid for the purchase of the Assets (the "Sealed Bids").  Within 48 business hours of the Sealed Bid Submission Deadline, Maltz in consultation with the Trustee, will determine the five (5) highest and/or best Sealed Bids (the "Top Sealed Bidders") and shall notify the Top Sealed Bidders that they are authorized to participate in Step Two of the Auction, which shall be a live virtual auction as discussed below.

C. Stalking Horse Bidder:  The Top Sealed Bidder who is determined to have submitted the highest and/or best Sealed Bid (the "Stalking Horse Bid") shall be deemed the stalking horse bidder (the "Stalking Horse Bidder").  Provided that the Auction is not terminated as set forth in section 4.D. below, in the event that the Stalking Horse Bidder is not determined to be the Successful Bidder it shall be entitled to a break-up fee equal to one percent (1%) of the amount of the Stalking Horse Bid (the "Break-Up Fee").  Additionally, the opening bid for Step Two of the Auction must be in an amount equal to or greater than the sum of the Stalking Horse Bid, the Break-Up Fee, and Fifty Thousand and 00/100 ($50,000) Dollars, which amount represents overbid protection (the "Opening Bid").

D. Failure to Hit the Reserve Price:  In the event that there are no Sealed Bids equal to or greater than the Reserve Price, the Trustee shall terminate the Auction, return all Qualifying Deposits to their respective Qualified Bidders, and continue to administer the Assets in accordance with prior Orders of the Bankruptcy Court or otherwise arrange for the Assets to be serviced as agreed to under an agreement with the Consultation Parties[2], subject to the approval of the Bankruptcy Court.

**Step Two – The Live Online Virtual Auction**:

~~D.~~E.    Hitting the Reserve Price:  If there is one or more Top Sealed Bids equal to or greater than the Reserve Price, the Auction shall continue with the Top Sealed Bidders, which includes the Stalking Horse Bidder, participating in a live online virtual auction to be conducted on **July 22, 2021 at 11:00 a.m.** (the "Online Auction"), with the next opening bid being equal to or greater than the Opening Bid.

~~D.~~F.    The Online Auction:  By no later than **4:00 p.m. on July 21, 2021**, Maltz shall provide the Top Sealed Bidders with the necessary information to participate in the Online Auction.  Online bidding will be made available to the Top Sealed Bidders *via* Maltz's online bidding App available for download in the Apple App Store or on Google Play, or *via* desktop bidding at RemoteBidding.MaltzAuctions.com.

---

[2] The Consultation Parties are (i) US Claims OPCO, LLC, (ii) BCP Special Opportunities Fund I Holdings LP, (iii) Prism Alt Income Fund, LLC, and (iv) Lenders Funding LLC.

3

      C.G.   Results of the Online Auction: Within forty-eight (48) hours after the conclusion of the Online Auction, the Trustee shall notify the Top Sealed Bidders as to who submitted the highest and/or best bid for the purchase of the Assets (the "Purchase Price") and has been determined to be the Successful Bidder, as well as, who submitted the second highest and/or best bid for the Assets (the "Second Highest Bidder"). All other Top Sealed Bidders shall have their respective Qualifying Deposits promptly returned, without interest.

5. The Successful Bidder shall be required to pay the Purchase Price, less its Qualifying Deposit (the "Purchase Price Balance"), by bank check or wire transfer no later than five (5) business days from the entry of an Order of the Bankruptcy Court confirming the results of the Auction and approving the sale to the Successful Bidder (the "Sales Confirmation Order"), subject to extension by the Trustee, in his sole and absolute discretion (the "Payment Deadline"). The Second Highest Bidder's Qualifying Deposit shall be held by the Trustee through the Payment Deadline and shall be returned, without interest, no later than five (5) business days after the Trustee's receipt and clearance of the Purchase Price Balance.

6. In the event that the Successful Bidder fails to tender the Purchase Price Balance by the Payment Deadline, or otherwise perform any of its obligations under these Terms and Conditions of Sale, the Successful Bidder's Qualifying Deposit shall be deemed forfeited as liquidated damages, and the Trustee shall be authorized to sell the Assets to the Second Highest Bidder, without any further notice, and without giving the Second Highest Bidder credit for the Successful Bidder's forfeited Qualifying Deposit, and upon such other terms and conditions as the Trustee deems appropriate. The Second Highest Bidder will then be deemed the Successful Bidder for all other aspects of these Terms and Conditions of Sale. Should the Second Highest Bidder fail to close on the Assets within such time as the parties may agree, but not to exceed fourteen (14) days after notice from the Trustee to the Second Highest Bidder of its obligations to close, the Trustee shall be authorized to sell the Assets to the next highest or best bidder at the Auction, provided such sale amount is greater than the Reserve Price, without the necessity of any further notice, or further Order of the Court.

7. All bidders who execute a copy of these Terms and Conditions of Sale shall be bound to all terms and conditions contained herein.

8. If the Trustee is unable to deliver the Assets in accordance with these Terms and Conditions of Sale for any reason whatsoever, or withdraws the Assets from the Auction, either prior or subsequent to the Auction, for any reason whatsoever, as he deems necessary or appropriate in his sole and absolute discretion, his only obligation shall be to refund the Qualifying Deposits, without interest, and any and all Qualified Bidders will have no recourse against the Trustee, Trustee's retained professionals, including his counsel, the Debtors, and/or the Debtors' estates.

9. The Auction results are subject to confirmation and approval by the Bankruptcy Court and shall not be deemed final until the entry of a final and non-appealable Sale Confirmation Order.

2696881v18 / 010001.756 / NBEBIRIAN

10. IRS regulations require Maltz to report all cash payments exceeding $10,000.00 from any one individual or entity.

11. By submitting a Qualifying Deposit, all Qualified Bidders are deemed to have read these Terms and Conditions of Sale and having agreed and acknowledged to be bound by them. There will be no refunds, substitutions, or exchanges of Qualifying Deposits, except as set forth herein, and there are no contingencies whatsoever.

12. Potential bidders will have the opportunity to conduct their own due diligence related to the Assets prior to the Auction, subject to a duly executed NDA. ~~Non-Disclosure Agreement~~.  Neither the Trustee nor any of his retained professionals have made any representations or warranties, nor is any bidder relying on any statements or information provided by the Trustee, nor any of his retained professionals, including, but not limited to any representations, warranties, statements or information as to the status of the underlying litigation cases, including, but not limited to, the likelihood of success on the merits and the prospective payoff amount related to the Assets.  The Trustee is neither liable nor bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations, or information pertaining to the Assets, made or furnished by the Trustee or any broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations, or information are expressly and specifically set forth in writing by the Trustee.  All Qualified Bidders acknowledge that they have conducted their own due diligence in connection with the Assets.

13. The Successful Bidder or the Second Highest Bidder, as the case may be, shall have thirty (30) days from the Trustee's receipt and clearance of the Purchase Price Balance to notify all parties in interest related to the purchased Assets of their acquisition of the Assets and to confirm any such amounts due and owing (the "Review Period"). During the Review Period, if the Successful Bidder or the Second Highest Bidder, as the case may be, determines that a Litigation Advance has already been paid off, the Successful Bidder or the Second Highest Bidder, as the case may be, shall notify the Trustee in writing, and shall provide the Trustee will the necessary supporting documents regarding such determination.  The Trustee will review each instance in which he was timely advised that a Litigation Advance has been paid off on an ad hoc basis.  If it is determined by the Trustee that a Litigation Advance has been paid off prior to the Auction, the Successful Bidder or the Second Highest Bidder, as the case may be, shall be entitled to a pro rata refund, with such pro rata amount being equal to the principal amount of the Litigation Advance multiplied by the percentage over the principal amount that the Assets were sold for. For example, if the aggregate principal amount of the Assets was equal to $10,000,000 and the bulk bid represents 1.2 times that amount (*i.e.,* $12,000,000), such refund shall be equal to 1.2 times the principal amount of that the specific already paid off Litigation Advance.  Upon expiration of the Review Period, all sales are final.

14. Nothing contained in these Terms and Conditions of Sale is intended to supersede or alter any provisions of the Title 11 of the United States Code (the "Bankruptcy Code"), or otherwise interfere with the jurisdiction of the Bankruptcy Court.  All of the terms and conditions set forth in these Terms and Conditions of Sale are subject to modification as may be directed by the Trustee, in consultation with the Consultation Parties, or by the Bankruptcy Court.  The Trustee, in consultation with the Consultation Parties, reserves the right to modify the terms and

2696881v18 / 010001.756 / NBEBIRIAN

conditions of sale at the Auction or thereafter to maintain consistency with the provisions of the Bankruptcy Code and/or prior Orders of the Bankruptcy Court.  For the avoidance of doubt, this paragraph is subject to paragraph 4(D) in all respects.  Nothing herein is intended to, or shall, provide the Trustee with any authority to modify, supersede or contravene paragraph 4(D) in any way.

15. Unless a Consultation Party is a Qualified Bidder, the Trustee and/or Maltz, as applicable, shall advise and transmit to the Consultation Parties in real time or as soon as practicable upon receipt any Bidding Registrations and Sealed Bids that are submitted and/or received, and the Consultation Parties shall be permitted to observe and/or monitor the Auction.

~~15.~~16.At the conclusion of the Auction, all Qualified Bidders who are not the Successful Bidder, subject to the terms and conditions of a previously executed and binding Non-Disclosure Agreement, shall return to the Trustee or destroy all documents and copies of documents or other confidential information furnished to, or related notes and/or other materials prepared for, the respective Qualified Bidders or to any of their agents or representatives in connection with the Auction and sale.  Any such documents or other confidential information that is not returned or destroyed shall remain subject to the confidentiality until returned or destroyed in accordance with this paragraph.

~~16.~~17.**BID RIGGING IS ILLEGAL, AND SUSPECTED VIOLATIONS WILL BE REPORTED TO THE DEPARTMENT OF JUSTICE FOR INVESTIGATION AND PROSECUTION. ANY DETERMINATION THAT A SUCCESSFUL BIDDER, SECOND HIGHEST BIDDER, OR ANY COMPETING BIDDER HAS ENGAGED IN BID RIGGING WILL RESULT IN THE FORFEITURE OF THEIR DEPOSIT**.

~~17.~~18.Pursuant to Bankruptcy Rule 6004-1 no appraiser, auctioneer or officer, director, stockholder, agent, employee, or insider of any appraiser of auctioneer, or relative of any of the foregoing, shall purchase, directly or indirectly, or have a financial interest in the purchase of, any property of the estates that the appraiser or auctioneer has been employed to appraise or sell.

~~18.~~19.The Bankruptcy Court shall determine any disputes concerning the Assets. By participating in the Auction, all bidders consent to the exclusive jurisdiction of the Bankruptcy Court to determine such disputes.

# **BIDDER REPRESENTATIONS**

- I am over 18 years old.
- I have no connections to the Trustee or Maltz.
- I have reviewed and agree to the Terms and Conditions of Sale.
- I was given the opportunity to conduct my own due diligence related to the Assets prior to the Auction. Any bid for any of the Assets is based solely on my own independent inspection and evaluation, subject to a duly executed Non-Disclosure Agreement. As a material inducement to this agreement: (1) I have undertaken to make my own examination before bidding; and (2) I assume all risk of any non-conformities.
- I acknowledge that the Trustee, Maltz, or any other parties acting on the Trustee's behalf, have not made and cannot make any representations or warranties of any kind concerning the Assets including, without limitation, any representations regarding the status of the underlying litigation cases, including, but not limited to, the likelihood of success on the merits and the prospective payoff amount related to each Litigation Advance.
- I agree to accept the auction sheets and records of sale as set forth by Maltz as final.
- I waive any potential conflict of interest and hereby relieve the Trustee and his professionals, including but not limited to Maltz, of all liability, shall hold harmless and shall indemnify all parties against any action, arbitration, award, claim, cost, damage, deficiency, demand, expense, injury, judgment, liability, loss, or suit of every kind, including attorneys' fees and costs of defense, asserted by anyone as a result of, or in relation to, the Auction, this document, the transaction contemplated, or any related dealings.
- I represent, warrant, and acknowledge that I have not engaged in any bid rigging, colluded with any other competing bidder, or intentionally suppressed my bid to alter the results of the Auction.

**I have read the foregoing and agree to be bound.**

Dated: _____

Signature:_____
Print Name: _____

Company Name (if applicable):_____
Title: _____

2696881v18 / 010001.756 / NBEBIRIAN

# **MEMORANDUM OF OPENING BID – SUCCESSFUL BIDDER**

Bid Amount: _____

The undersigned has agreed to purchase the Assets (as defined in the annexed Terms and Conditions of Sale) sold by Kenneth P. Silverman, Esq., the chapter 7 trustee of the jointly administered bankruptcy estates of Liberty Bridge Capital Management GP, LLC, *et al.* for the sum of $_____ DOLLARS, and to hold all benefits and obligations of a Successful Bidder under the Terms and Conditions of Sale and this Memorandum of Opening Bid, and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of said Assets and this Memorandum of Sale.

_____

SUCCESSFUL BIDDER (Signature)

_____

PRINT NAME

_____

ADDRESS

_____

ADDRESS (City, State, Zip)

_____

TELEPHONE NUMBER

_____

EMAIL ADDRESS

2696881v18 / 010001.756 / NBEBIRIAN

Received from _____the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Assets pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price for the Successful Bidder in the above sale was for the sum of $_____.

_____

[TRUSTEE]

**SUCCESSFUL BIDDER ATTORNEY INFORMATION**

Name _____

Address _____   Phone: _____

9

2696881v18 / 010001.756 / NBEBIRIAN

# **MEMORANDUM OF OPENING BID – SECOND HIGHEST BIDDER**

Bid Amount: _____

The undersigned has agreed to purchase the Assets (as defined in the annexed Terms and Conditions of Sale) sold by Kenneth P. Silverman, Esq., the chapter 7 trustee of the jointly administered bankruptcy estates of Liberty Bridge Capital Management GP, LLC, *et al.* for the sum of $_____ DOLLARS, and to hold all benefits and obligations of a Second Highest Bidder under the Terms and Conditions of Sale and this Memorandum of Opening Bid, and hereby promises and agrees to comply with the annexed Terms and Conditions of Sale of said Assets and this Memorandum of Sale.

_____

SECOND HIGHEST BIDDER (Signature)

_____

PRINT NAME

_____

ADDRESS

_____

ADDRESS (City, State, Zip)

_____

TELEPHONE NUMBER

_____

EMAIL ADDRESS

2696881v18 / 010001.756 / NBEBIRIAN

Received from _____the sum of $_____ DOLLARS, as a non-refundable deposit for the purchase of the Assets pursuant to the Terms and Conditions of Sale.

This is to verify that the final Purchase Price for the Second Highest Bidder in the above sale was for the sum of $_____.

_____

[TRUSTEE]

**SECOND HIGHEST BIDDER ATTORNEY INFORMATION**

Name _____

Address _____     Phone: _____

2696881v18 / 010001.756 / NBEBIRIAN