| | |
|---|---|
| MICHAEL PERLE, LLC<br>192 Newtown Lane<br>East Hampton, NY 11937<br>917-744-6814<br>Michael.perle@gmail.com<br>Attorneys for Claimants-Creditors<br>*Pashman Stein Walder & Hayden*<br>*and Michael Perle LLC* | Hearing Date: February 28, 2022<br>Time: 10:00 AM<br><br>**TELEPHONIC**<br><br>Objection Date: February 21, 2022<br>Time: 4:00 PM |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In Re:**<br><br>**IN RE LIBERTY BRIDGE GP CAPITAL MANAGEMENT, LLC and CASH4CASES, INC.,**<br><br>**Debtors.** | CHAP. 7<br>Case No. 20-10009 (SCC)<br><br>**(Jointly Administered)** |

**MOTION FOR REFUND OF CLAIMANTS' MONEY
(RELATING TO ATTORNEYS' FEES FULLY EARNED
PRE-PETITION, AND HELD IN TRUST PRE-PETITION,
BUT RELINQUISHED PER THE TRUSTEE'S
DEMAND; THE (THE SUBJECT OF CLAIM # 23)**

**A.    Nature of the Motion.**

The Debtors in this consolidated case are Liberty Bridge GP Capital Management. LLC and Cash4Cases, Inc (collectively "Debtors"). The movants are the firm of Pashman Stein Walder and Hayden ("PSWH") and Michael Perle, LLC (collectively "the Attorneys").[1] They submit this motion under 11 U.S.C. §§ 506(a) and 507 and B.R. 3012(a) and (b) to: (i) establish a secured claim in the amount of $23,725.00 (Claim #23), and (ii) determine it is entitled to priority over administrative claims.[2] Movants further seek the refund of this amount on the basis it is not only is secured, it

---

[1] Michael R. Perle, Esq. ("Perle") and Alan Silber Esq. ("Silber") of PSWH, who were retained by the Debtors pre-petition, are lawyers admitted to practice in New York and New Jersey.

[2] The Court's jurisdiction to determine the proper treatment of the amount in question is conferred under 28 U.S.C. § 1334(b), since it "arises in" the bankruptcy case. This is a core proceeding, subject to final orders of the bankruptcy judge, since the outcome of the application

represents their directly traceable *property,* which was involuntarily relinquished per the demand of the Chapter 7 trustee. The property in question was in the form of *money* held in trust, per pre-petition, agreement, representing fees *earned* pre-petition.

This motion is accompanied by affirmation of Alan Silber, Esq. ("Silber Aff."), plus exhibits, including a proposed form of order. As set forth more fully in the Silber Aff., per a pre-petition agreement among the tasks undertaken by the Attorneys was recovering $530,000 paid by Jaeson Birnbaum ("Birnbaum"), the-then principal of the Debtors, improperly utilizing funds of the Debtors as a deposit on the purchase for $5.3 million a New Jersey residence for his personal use. The gravamen of the understanding was that $100,000 would be carved-out to the extent available from any recovery achieved by the Attorneys for the benefit of the Debtors, to be held as security for, and applied as *earned* to pay for their past and continuing services, after exhausting their initial retainer.

The Attorneys recovered $410,000 pre-petition ("the Deposit Recovery") in a settlement achieved in late November 2019. The proceeds were deposited in the PSWH trust account in New Jersey. As directed, pre-petition disbursements were made from the trust account to fund the Debtors' operating expenses, and various costs, expenses and fees incurred "in contemplation of the filing of a Petition..., and "in connection with the case," including, per the carve-out agreement, the unpaid balance of the Attorneys' fees earned and *invoiced* prior to filing, $68,227.43, and covering essentially all of the fees and expenses relating to filing the Petitions.

A minor portion of the Attorneys' pre-petition services involved addressing matrimonial and psychological matters relating to Birnbaum, the controlling person of the Debtors, which threatened the ability to proceed with any plan to address the financial issues of the Debtors. These services also were clearly "in connection with the case," since preservation of Birnbaum's tenuous mental

---

affects the administration of the estates. 28 U.S.C. § 157(b). Per B.R. 3012(b), this matter may be decided on motion.

-2-

stability, and freedom, as well as countering the claims of his estranged wife, were critical to the Debtors' ability, both to prepare for pre-petition, and proceed with the case post-petition. See *In re Rheuban*, 121 B.R. 368 (Bankr. C.D.Cal. 1980), *rev'd in part on other grounds*, 124 B.R. 301 (C.D.Cal.1990), *on remand*, 128 B.R. 551 (Bankr.C.D.Cal.1991).

The other costs paid out of the Deposit Recovery included, *inter alia*, the pre-petition costs relating to (i) the defense of the debtors in the California case, (ii) the fees of Brian Ryniker, the Debtors' consultant and proposed CRO, (iii) the fees of forensic accountants, and (iv) the retainer of bankruptcy counsel, Klestadt Winters Jureller Southard & Stevens, LLP as well as various expenses of Debtors necessary to maintain them in operation prior to filing.

The filing date was accelerated to January 3, 2020 to thwart, through the automatic stay, the application in *Lenders Funding, LLC v. Cash4Cases, Inc. et Al.*, (N.D.Ca. No. 4:19-CV-08096) (the "California case") to place the Debtors in receivership in the Northern District of California. Because of the New Years holiday and the acceleration of the filing, $23,725 in fully *earned* fees for the period through December 31, 2019 had not yet been tallied or drawn-down.

As of the filing date, $191,772.57 remained on deposit in the PSWH trust account, of which $26,662 represented the balance of the $100,000 original carve-out for the fees of the Attorneys. Following the appointment of the trustee Kenneth Silverman, Esq. ("the Trustee"), $165,110.57 was remitted to the Trustee per his initial directive on March 16, 2020, but the balance of the carve-out, $26,662, was permitted to remain in the PSWH trust account.

As shown in the Silber Aff., the balance of the carve-out, $26,662, including the *earned* amount of $23,725[3], was involuntarily relinquished per the Trustee's later demand on February 9, 2021, subject to a reservation of rights; all but $2,937 remitted at that time represent *earned pre-*

---

[3] Notably, in response to the request of the creditors in connection with the agreement, the Attorneys discounted their fees by 15%, retroactive to the commencement of their services. Accordingly they submit the reasonableness of their earned fees is beyond any good faith challenge.

-3-

*petition fees.* As shown *infra.,* this *earned* portion not only was fully secured, it was the *property* of the Attorneys as of the filing date. This motion seeks a refund of this sum of $23,725 (Claim #23).

## ARGUMENT

### THE ATTORNEYS OWNED, WERE SECURED AS TO, AND ARE ENTITLED TO BE REFUNDED MONEY THEY EARNED PRE-PETITION, WHICH IS DIRECTLY TRACEABLE TO THE FUND THEY RECOVERED, BUT INVOLUNTARILY RELINQUISHED TO THE TRUSTEE

**A.     Summary of Argument.**

The Attorneys recovered $410,000 pre-petition ("the Deposit Recovery"). Out of the fund the Attorneys thus created the Debtors, through disbursements from the PSWH trust account, not only were able maintain their operations pre-petition, per Code § 329, they financed essentially all of the costs of both filing the voluntary petitions, and defending the California case, as well various other costs, the expenses and fees incurred by the Debtors "in contemplation of the filing of a Petition..., and "in connection with the case," including the previously billed fees of the Attorneys. The amount now at question represents fees already *earned* for services rendered pre-petition, differing only from the fees paid pre-petition insofar as they had not yet been billed or drawn-down pre-petition. As shown on the invoices attached to the Silber Affidavit, these pre-petition services provided a direct, clear, non-duplicative and unassailable benefit to the Debtors' estates; *id.,* §330.

Because $23,675 out of the $26,662 involuntarily relinquished to the Trustee represented fees *earned* pre-petition, this money was, and thereafter remained the property of the Attorneys, rather than property of the Debtors' estates under 11 U.SC. § 541(a)(1). Additionally, because it was in the form of *money*, it was the subject of a UCC Article 9 a security interest, *perfected by possession*, as well as by an equitable lien per the controlling case law.

**B.     The Amount of $23,725, out of the $26,662 Remaining in the PSWH Trust Account after $165,110.57 Had Been Remitted to Trustee, Represented Fees Earned Pre-Petition and Thus Was the Attorneys' Property, Not § 541(a) Property of the Debtors.**

The law is clear that a pre-petition security retainer, or recovered funds held in trust by an attorney, to the extent they represent fees *earned* up to commencement of the case, are not part of the debtor's estate. *Stewart v. Law Offices of Dennis Olson*, 93 B.R. 91, 93-94 (Bankr.N.D. Tex. 1988), affirming on modified grounds *sub nom.*, *In re Leff,* 88 B.R. 105 (Bankr.N.D.Tex. 1988) ("the court holds that the bankruptcy court [previously] erred when it extended the reach of § 541(a)(1) to the portion of an attorney's fee retainer earned prepetition"); *In re Lilliston*, 127 B.R. 119, at 121 (Bankr. D. Md. 1991) ("[a] portion of a fee retainer paid to the debtor's attorney which has been earned prepetition is not property of the bankruptcy estate [citing *Stewart, supra.*]..").

Debtors, *qua* pre-petition clients, only retain an interest in a security retainer as of the petition date to the extent it remains unearned. Any portion *earned pre-petition*, though not drawn-down on the filing date, belongs to the attorney. *White v. Coyne, Schultz, Becker & Bauer, S.C.*, 483 B.R. 169 ((Bankr. W.D. Wis.2012); see also *Fiegen Law Firm, P.C. v. Fokkena (In re On-Line Services Ltd.*), 324 B.R. 342, 346-347, (B.A.P. 8th Cir. 2005):

> Once a bankruptcy case is filed, the amount of fees to be paid for prepetition services is subject to review by the court. Nevertheless, once determined, such fees are payable out of the funds in which Fiegen held a security interest as of the petition date....We hold, therefore, that the bankruptcy court erred in holding that the allowed prepetition fees and expenses were not payable out of the retainer. [*Id.* at 347].

These principles apply doubly here since the amount remaining in trust as of the filing date, most of which represented the *earned* fees of the Attorneys, was not derived from a *retainer* paid pre-petition from the funds of the Debtors. It was instead the balance of the fund created by the Attorneys in the form of a $410,000 pre-petition recovery from a third-party. The portion representing *earned* pre-petition fees, $23,725, was secured by the equitable counterpart of a charging lien under N.Y.J.Law § 475 *In re PDQ Copy Center*, 27 B.R. 123 (Bankr.S.D.N.Y. 1983); *In re A. Tarricone, Inc.*, 76 B.R. 53 (Bankr.S.D.N.Y. 1987); *In re French*, 111 B.R. 391, 393 (Bankr. N.D.N.Y.1989). As such the earned portion was the Attorneys' property, and must be refunded.

**C.   The Full Amount of $26,622 Remaining in the PSWH Trust Account as of the Filing Date Was Secured by a Common Law Possessory Lien, Including the $23,725 Portion Which Already Was the Property of the Attorneys Because it Was Fully *Earned*.**

*In re Interstate Dept. Stores, Inc.*, 128 B.R. 703, at 706 (Bankr. N.D.N.Y. 1991) held that:

> When the debtor paid the $45,000 to debtor's counsel as a retainer, debtor's counsel acquired a common-law possessory lien in and to the fund which stands as security for payment of their fees. *Attorneys at Law, N.Y.Jur.2d* §§ 168-174. To the extent that the fees are subsequently earned, debtor's counsel is a secured creditor, secured by a possessory security interest in cash. N.Y.U.C.C. § 9-305. *In re Burnside Steel Foundry Company*, 90 B.R. 942 (Bankr.N.D.Ill. 1988).

The matter here is *a fortiori Interstate Dept. Stores* inasmuch as the amount in question was not simply a pre-petition retainer paid by the Debtors, subject to a retaining lien, but rather a portion of a fund created pre-petition by the Attorneys themselves, for the benefit of the Debtors. *In re French*, 111 B.R. at 393. Per 11 U.S.C.A. § 725, such a lien, and the right to draw-down under it, are entitled to priority over any distribution under § 726. Since per § 725 the Attorneys hold an "interest, such as a lien" in these moneys, it must be satisfied before unsecured administrative expenses. *Cf. In re Burnside Steel Foundary Co.*, 90 B.R. at 944;

**D.   The *Money* Representing Balance of the Carve-Out from Deposit Recovery in the Trust Account Was the Subject of *Perfected* Security Interest Under UCC Article 9.**

As noted in *Goldberg v. N.Y. Community Bank*corp, 565 F.3d 66, at 71-72 (2d Cir.2009):

> Pursuant to New York's Uniform Commercial Code § 9-312(b)(3), a security interest in money can only be perfected by taking possession, or "control," of the money. See *N.Y. U.C.C. Law* § 9-312(b)(3) ("[A] security interest in money may be perfected only by the secured party's taking possession under Section 9-313."); *cf. Berkowitz v. Chavo Int'l, Inc.*, 74 N.Y.2d 144, 146-47, 544 N.Y.S.2d 569, 570, 542 N.E.2d 1086 (1989).

The counterpart New Jersey provision, *N.J.S.A.* § 12A:9-312(b)(3) is identical. Likewise, both *N.Y.U.C.C. Law* § 9-313(a) and *N.J.S.A.* § 12A:9-313(a) provide that possession by or delivery to the putative secured party perfects security interest without filing; i.e.:

> (a) **Perfection by possession or delivery**. Except as otherwise provided in subsection (b), a secured party may perfect a security interest in ... *money...* by taking

possession of the collateral.....

See also *In re Apponline.com, Inc.*, 285 B.R. 805, 820 (Bankr. E.D.N.Y. 2002).

Thus, based upon the Attorneys' pre-petition *possession* of the balance of the Deposit Recovery in the form *money*, which per agreement was to serve as security for, and the source of payment of up $100,000 of their fees beyond the initial retainer, as earned, they had a *perfected* security interest in the full $26,662 balance of the Deposit Recovery remaining in trust. That *earned* portion, $23,725 remains the Attorneys' property. It must be refunded now from the funds directly traceable to the Deposit Recovery, which were previously involuntarily relinquished in response to the Trustee's demand. *In re Smith*, 263 B.R. 71 (Bankr. N.J. 2001).

**E.     Under a Variety of Related Theories, the Attorneys Held an Equitable Lien on the Undisbursed Balance in the PSWH Trust Account in New Jersey.**

The Deposit Recovery constituted a $410,000 fund created *pre-petition* by the Attorneys, as New Jersey attorneys, pertaining to New Jersey real estate. It was utilized by the Debtors *pre-petition* to cover expenditures which provided substantial and direct benefits to the Debtors. Without this fund created pre-petition by the Attorneys, the Debtors would not have had the ability to pay the expense of defending the California case, and it is unlikely voluntary petitions could have been filed; *cf. In re Texaco, Inc.*, 90 B.R. 622, 627-630 (Bankr. S.D.N.Y. 1988); *In re Brierwood Manor, Inc.*, 239 B.R. 709, 716-17 (Bkrtcy.D.N.J. 1999).

Recognition and enforcement of the Attorneys lien, and refunding to them the outstanding balance of the fees *earne*d pre-petition would serve the overarching interest in providing adequate assurance that, as intended, the amount held in trust was applied as intended---to the payment of fees *earned* pre-petition by the Attorneys; see *In re Norsal Industries, Inc.*, 147 B.R. 85, 89 (Bankr. E.D.N.Y. 1992); *cf.* 11 U.S.C.A. § 366(b); *cf.*, *In re 20 Bayard Views LlC,* 445 B.R. 83, 105 (Bankr. E.D.N.Y. 2011). "Counsel . . . will not be required to share a prepetition retainer pro rata with other

administrative claimants where either the retainer is treated as security or the retainer is held in trust."). *In re Printing Dimensions, Inc.*, 153 B.R. 715, 719 (Bankr. D. Md. 1993). *In re Appalachian Star Ventures, Inc.*, 341 B.R. 222, 228 (Bankr. E.D. Tenn. 2006) ( attorney had a lien on a retainer paid by the debtor, and § 726(b) was not applicable because the attorney was not equally situated with other administrative claimants).

F.  **New Jersey Law Imposes an Equitable Lien in Favor of the Attorneys on $23,675 of the Moneys Which Remained in Trust on the Filing Date.**

New Jersey common law controls the Attorneys' *property* rights with respect to the funds in the PSWH New Jersey trust account on the filing date to the extent they represented a portion of the Deposit Recovery, which related to New Jersey real property. Under New Jersey common law the Attorneys held an equitable lien on the money in trust to the extent it represented the unpaid balance of their *earned* fees, $23,675. Any such lien survived the transfer to the Trustee. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *In re Tarricone, Inc.*, 76 B.R.53, 54-56 (Bankr. S.D.N.Y.1987); *In re Pruitt,* 401 B.R. 546, 553-554 (Bankr. D. Conn. 2009).

*In re Hoffman,* 63 N.J. 69, 304 A.2d 721 (1973) is the seminal New Jersey case on the doctrine of equitable liens. *Hoffman* involved the claim of an accountant, Brooks, for payment for his services to a decedent, Hoffman, from the proceeds of any tax refund received post-mortem by the decedent's estate. It was based on the decedent's oral promise to pay for these services from any such refund. The proceeds of the tax refund emerged as the only asset of Hoffman's otherwise insolvent estate. The court in *Hoffman* noted that rather than a lien based on a statute, Brooks' claim was in the nature of an "equitable lien," which

> may be created by express executory contracts relating to specific property then existing, or property to be afterward acquired; and sometimes they are raised *ex aequo et bono*, according to the dictates of equity and conscience, as where a contract of reimbursement could be implied at law . . ." . . . Such a lien is a right of a special nature in a fund and constitutes a charge or encumbrance upon the fund. . . . Where one promises to pay for services rendered out of a fund created in whole or in part by the efforts of the promisee, a lien in favor of the promisee will attach

-8-

to the fund when it comes into existence. [*Hoffman,* 63 N.J. at 77, 304 A.2d at 728].

The court further noted that "[n]one of the parties has disputed that Robert Hoffman intended to pay the fee of Brooks from the amount received through the tax refund." *Hoffman,* 63 N.J. at 78, 304 A.2d at 729. On this basis Brooks argued "that the refund proceeds are subject to an equitable lien in his favor which attached to the money before the statute [*N.J.S.A.* 3A:24-2], controlling the distribution of a decedent's assets] is applied." The court agreed, holding that

> [s]ince the fund was created by the efforts of Brooks, we think that his claim falls within the definition of an equitable lien. Accordingly, before others receive the benefit of his efforts, equity requires that Brooks' claim be satisfied. . . . We thus conclude that the claim of Brooks should be satisfied first from the proceeds of the [refund] checks [ahead of the creditors of the estate]. [*Hoffman*, 63 N.J. at 78, 304 A.2d at 729] [Citations omitted].

Following *Hoffman, In re Alston*, 322 B.R. 265, 268-270 (Bankr. N.J. 2005); *Cohen v. Sheridan Estate,* 218 N.J. Super. 565, 570, 528 A.2d 101, 106 (N.J.Super.Ch.Div. 1987); *cf. In re L.D. Patella Constr. Corp.*, 114 B.R. 53 (Bankr. N.J. 1990) (broker has no statutory lien for commission in New Jersey, but there is an equitable lien).

Although the Deposit Recovery was achieved without litigation, and therefore the New Jersey Attorney's Lien Statute, *N.J.S.A.* 2:13-5 was not directly applicable, that statute essentially codified existing case law recognizing attorneys had equitable liens on funds or property recovered in whole or in part through their services on behalf of a party, with or without litigation. New Jersey bankruptcy cases involving pre-petition legal services have uniformly embraced the same principles as the former case law to enforce equitable liens regarding such claims, not only in treating them as secured, but also as according them priority (even where, unlike here, the recovery had not been achieved pre-petition). *In re Alston*, 322 B.R. at 270-271; *accord, In re Gallagher*, 283 B.R. 608 (Bankr.. M.D.Fla. 2002); *cf. In re A. Tarricone, Inc.,* 76 B.R. at 55-56; *Musikoff v. Jay Parrino's the Mint,* L.L.C., 172 N.J. 133, 706 A.2d. 866 (2002).

**CONCLUSION**

For all of the foregoing reasons an order should be entered determining that Claim # 23 is secured, and entitled to priority over administrative claims to the extent of $23,725, inasmuch as the amount of $23,725 represents the *property* of the movant Attorneys, not the Debtors' estate, and accordingly the Trustee should be directed the Trustee to restore and refund $23,725 to the Attorneys per the proposed form attached to the Silber Aff. as Exhibit W.

                                                Respectfully submitted,

                                                MICHAEL PERLE, LLC

                                                By: /s/ Michael R. Perle
                                                    Michael R. Perle
                                               Attorneys for Claimants
                                               *Pashman Stein Walder & Hayden* and
                                               *Michael Perle, LLC*

Dated: East Hampton, New York
       February 7, 2022