**SILVERMANACAMPORA LLP**
Counsel to Kenneth P. Silverman,
The Chapter 7 Trustee
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Justin S. Krell

**Hearing Date: June 14, 2022**
**Time: 10:00 a.m.**

**Objections Due: June 7, 2022**
**Time: 4:00 p.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

LIBERTY BRIDGE CAPITAL
MANAGEMENT GP, LLC, *et al.*,[1]

                Debtors.
------------------------------------------------------------x

Chapter 7
Case No. 20-10009 (SCC)
(Substantively Consolidated)

## SIXTH INTERIM APPLICATION OF SILVERMANACAMPORA LLP, ATTORNEYS FOR THE TRUSTEE, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD JANUARY 1, 2022 THROUGH AND INCLUDING APRIL 30, 2022

SilvermanAcampora LLP ("SilvermanAcampora" or the "Applicant"), attorneys for Kenneth P. Silverman, Esq., the chapter 7 trustee (the "Trustee") of the substantively consolidated estates of Liberty Bridge Capital Management GP, LLC, *et al.* (collectively, the "Debtors"), submits this sixth interim application for compensation (the "Application") seeking entry of an order pursuant to sections 105 and 330 of title 11, United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the Southern District of New York, and General Order M-447 RE: Amended Guidelines for Fees and Disbursements for

---

[1] The Debtors in these cases, along with the last four digits of their federal tax identification numbers are (i) Liberty Bridge Capital Management GP, LLC (9236) (Case No. 20-10009); (ii) Cash4Cases, Inc. (8244)(Case No. 20-10010); (iii) Liberty Bridge Capital Management IM, LLC (2955)(Case No. 20-10011); (iv) Liberty Bridge Capital Management, L.P. (6434)(Case No. 20-10012); (v) Liberty Bridge Finco LLC (5215)(Case No. 20-10013); (vi) Liberty Bridge Settlement Clearing, LLC (8144)(Case No. 20-10014); (vii) Diversified Pre- Settlement Portfolio I, a Series of Liberty Bridge Capital Management, L.P. (1925)(Case No. 20-10015); and (viii) Diversified Pre-Settlement Portfolio II, a Series of Liberty Bridge Capital Management, L.P. (1660)(Case No. 20-10016).

Professionals in Southern District of New York Bankruptcy Cases (the "Guidelines"), and respectfully sets forth and represents as follows:

## INTRODUCTION

1. On August 24, 2020, this Court entered an order, *inter alia*, approving Applicant's first application for an interim allowance of compensation and reimbursement of expenses in the amount of Eight Hundred Fifty-Eight Thousand Six Hundred Forty-Three and 00/100 ($858,643.00) Dollars[2] in fees and Seventeen Thousand Seven Hundred Forty-Two and 16/100 ($17,742.16) Dollars in expenses (the "First Fee Order").

2. On December 9, 2020, this Court entered an order, *inter alia*, approving Applicant's second interim allowance of compensation and reimbursement of expenses in the amount of Five Hundred Twenty-Five Thousand Seven Hundred Four and 25/100 ($525,704.25) Dollars3 in fees and Twelve Thousand Thirty-Nine and 51/100 ($12,039.51) Dollars in expenses (the "Second Fee Order"). The Second Fee Order also allowed for payment of One Hundred Sixty-Two Thousand Seven Hundred Thirty-Three and 75/100 ($162,733.75) Dollars in fees previously approved and held-back pursuant to the First Fee Order, leaving a holdback balance of Two Hundred Thousand and 00/100 ($200,000) Dollars.

3. On April 28, 2021, this Court entered an order, *inter alia*, approving Applicant's third interim allowance of compensation and reimbursement of expenses in the amount of Two Hundred Forty-Three Thousand Four Hundred Forty-Three and 50/100 ($243,443.50) Dollars[4] in

---

[2] This award was subject to a hold-back of $257,592.90 pending further order of the Court. Therefore, Applicant received payment in the amount of $601,050.10 for fees and $17,742.16 for expenses.

[3] This award was subject to a hold-back of $105,140.85 pending further order of the Court. Therefore, Applicant received payment in the amount of $420,563.40 for fees and $12,039.51 for expenses.

[4] This award was subject to a hold-back of $48,688.70 pending further order of the Court. Therefore, Applicant received payment in the amount of $194,754.80 for fees and $9,548.18 for expenses.

2800837v3 / 010001.756 / LMM

fees and Nine Thousand Five Hundred Forty-Eight and 18/100 ($9,548.18) Dollars in expenses (the "Third Fee Order"). The Third Fee Order also allowed for payment of One Hundred Twenty-Five Thousand and 00/100 ($125,000) Dollars in fees previously approved and held-back pursuant to the Second Fee Order, leaving a holdback balance of One Hundred Twenty-Three Thousand Six Hundred Eighty-Eight and 70/100 ($123,688.70) Dollars.

4.        On September 28, 2021, this Court entered an order, *inter alia*, approving Applicant's fourth interim allowance of compensation and reimbursement of expenses in the amount of Five Hundred Twenty-Seven Thousand Seven Hundred Two and 50/100 ($527,702.50) Dollars[5] in fees and Seven Thousand Seven Hundred Twenty-Three and 85/100 ($7,723.85) Dollars in expenses (the "Fourth Fee Order"). The Fourth Fee Order also allowed for payment of Seventy-Five Thousand and 00/100 ($75,000) Dollars in fees previously approved and held-back pursuant to the Third Fee Order, leaving a holdback balance of One Hundred Twenty-Seven Thousand Eight Hundred Forty-Four and 08/100 ($127,844.08) Dollars.

5.        On February 28, 2022, this Court entered an order, *inter alia*, approving Applicant's fifth interim allowance of compensation and reimbursement of expenses in the amount of Five Hundred Forty-Four Thousand Ninety-Two and 50/100 ($544,092.50) Dollars[6] in fees and Eleven Thousand One Hundred Forty-Seven and 64/100 ($11,147.64) Dollars in expenses (the "Fifth Fee Order"). The Fifth Fee Order also allowed for payment of Seventy-Five Thousand and 00/100 ($75,000) Dollars in fees previously approved and held-back pursuant to the Fourth Fee Order, leaving a holdback balance of One Hundred Seven Thousand Two Hundred Fifty-Three and 33/100 ($107,253.33) Dollars (the "Prior Holdback").

---

[5] This award was subject to a hold-back of $79,155.38 pending further order of the Court. Therefore, Applicant received payment in the amount of $448,547.12 for fees and $7,723.85 for expenses.

[6] This award was subject to a hold-back of $79,155.38 pending further order of the Court. Therefore, Applicant received payment in the amount of $448,547.12 for fees and $7,723.85 for expenses.

6.  By this Application, SilvermanAcampora seeks entry of an order authorizing and approving (i) its sixth interim allowance and award of compensation for the professional services rendered as attorneys for the Trustee for the sixth application period (the "Sixth Application Period") in the amount of Two Hundred Thirty-Seven Thousand Two Hundred Seventeen and 00/100 ($237,217.00) Dollars; (ii) payment for reimbursement of actual and necessary expenses incurred by SilvermanAcampora during the Sixth Application Period in connection with the rendering of its services in the amount of Ten Thousand Two Hundred Seventeen and 32/100 ($10,217.32) Dollars; (iii) payment of fees in the amount of Two Hundred Fourteen Thousand and 00/100 ($214,000.00) Dollars, which amount is net the current holdback of Twenty-Three Thousand Two Hundred Seventeen and 00/100 ($23,217.00) Dollars (the "Current Holdback"); (iv) partial payment of the Prior Holdback in the amount of Eighty-Six Thousand and 00/100 ($86,000.00) Dollars, leaving an outstanding holdback in the amount of Forty-Four Thousand Four Hundred Seventy and 33/100 ($44,470.33) Dollars[7], subject to approval of this Court at a later date; (iv) a total payment of fees in the amount of Three Hundred Thousand and 00/100 ($300,000.00) Dollars[8]; and (v) such other, further, and different relief as this Court may deem just and proper.

---

[7] Applicant's Prior Holdback was in the amount of One Hundred Seven Thousand Two Hundred Fifty-Three and 33/100 ($107,253.33) Dollars. Applicant now seeks payment from the Prior Holdback in the amount of Eighty-Six Thousand and 00/100 ($86,000.00) Dollars, leaving a balance from the Prior Holdback in the amount of Twenty-One Thousand Two Hundred Fifty-Three and 33/100 ($21,253.33) Dollars. Thus, when considering the balance of the Prior Holdback and amount of the Current Holdback, the total aggregate holdback for all application periods will be Forty-Four Thousand Four Hundred Seventy and 33/100 ($44,470.33) Dollars.

[8] Applicant has agreed to a 10% holdback equal to Twenty-Three Thousand Two Hundred Seventeen and 00/100 ($23,217.00) Dollars in its fees for this interim fee application period and, thus, seeks an award authorizing payment for fees in the voluntary reduced amount of Two Hundred Fourteen Thousand and 00/100 ($214,000.00) Dollars and expenses in the amount of Ten Thousand Two Hundred Seventeen and 32/100 ($10,217.32) Dollars for a total payment sum of Two Hundred Twenty-Four Thousand Two Hundred Seventeen and 32/100 ($224,217.32) Dollars. Applicant also seeks payment from the Prior Holdback of Eighty-Six Thousand and 00/100 ($86,000.00) Dollars (the "Prior Holdback Payment"). Thus, the remaining holdback after payment pursuant to this Application and the addition of the Current Holdback will be $44,470.33.

7. Jurisdiction over these proceedings and this Application is based upon 28 U.S.C. §§157(a) and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Eastern District of New York, dated December 5, 2012, effective as of June 23, 2011 (Amon, C.J.). This Court is the proper venue for this proceeding in accordance with 28 U.S.C. §§1408 and 1409.

8. The statutory predicates for the relief requested herein are Bankruptcy Code § 330 and Bankruptcy Rule 2016.

## BACKGROUND

9. On January 3, 2020 (the "Filing Date"), the Debtors filed voluntary petitions for relief under Chapter 7 of the Bankruptcy Code in this Court.

10. By Notice of Chapter 7 Bankruptcy Case, dated January 3, 2020, Kenneth P. Silverman, Esq., was appointed the interim chapter 7 trustee of the Debtors' estates.

11. On January 10, 2020, the Court approved the joint administration of the Debtors' cases, captioning the jointly administered cases as referenced above.

12. On February 4, 2020, the initial section 341 First Meeting of Creditors was held and the Trustee duly qualified and has become the permanent Trustee.

13. On February 28, 2020, this Court entered an order granting the application to employ SilvermanAcampora as counsel to the Trustee. Annexed hereto as **Exhibit A** is a copy of the Applicant's retention order.

14. On June 3, 2020, the Court entered the Claimed Cash Order (defined below), authorizing the Trustee's use of the Claimed Cash (defined below) in accordance with an approved budget. [ECF Doc. No. 86].

15. On November 17, 2020, the Court entered a Second Claimed Cash Order (the "Second Claimed Cash Order") authorizing the Trustee's use of the Claimed Cash in accordance with the approved extended budget. [ECF Doc. No. 130].

16. On May 18, 2021, the Court entered a Third Claimed Cash Order (the "Third Claimed Cash Order") authorizing the Trustee's use of the Claimed Cash in accordance with the approved extended budget. [ECF Doc. No. 199].

17. On September 27, 2021, the Court entered a Fourth Claimed Cash Order (defined below) authorizing the Trustee's use of the Claimed Cash in accordance with the approved extended budget. [ECF Doc. No. 265].

18. On October 28, 2021, the Court entered a Fifth Claimed Cash Order (defined below) authorizing the Trustee's use of the Claimed Cash in accordance with the approved extended budget. [ECF Doc. No. 278].

19. On November 16, 2021, the Court entered an Order approving the global settlement agreement (the "Global Settlement") by and among Kenneth P. Silverman, solely in his capacity as the Chapter 7 Trustee of the Debtors' estates, Lenders Funding, LLC, BCP Special Opportunities Fund I Holdings LP, Prism Alt Income Fund, LLC, US Claims Opco LLC, Multi Funding Inc., Pierce III LLC, South Ave Capital Litigation Funding I LLC, Coop Capital LLC and Camille Raia (collectively, the "Interested Parties"). [ECF Doc. No. 290].

20. Under the terms of the Global Settlement, an administrative claims reserve was established for payment of unpaid administrative claims, which shall equal the aggregate remaining allocation for professional costs under the extended budget set forth in the Fifth Claimed Cash Order in an amount not to exceed two million eighteen thousand three hundred ten dollars ($2,018,310) consistent with the extended budget, provided that any unused monthly allocation in the extended budget may roll over to the post-budget wind-down period (the

"Rollover Funds"). Additionally, the Global Settlement also established a reserve for wind down costs in the amount of two hundred seventy-five thousand three hundred dollars ($275,300.00) (the "Winddown Reserve", and together with the Rollover Funds, collectively the "Administrative Claims Funds"). Annexed hereto as **Exhibit B** is a copy of the Global Settlement.

21. On November 16, 2021, the Debtors' cases were substantively consolidated. [ECF Doc. No. 288].

## THE APPLICATION

22. This Application is Applicant's sixth interim application requesting payment of compensation and reimbursement of expenses, and this Application is made pursuant to Bankruptcy Code section 330 and under the terms of the Global Settlement, specifically with respect to the Administrative Claims Funds.[9]

23. Applicant is a firm concentrating in the practice of, among other areas, reorganization, bankruptcy, litigation and insolvency related matters. Applicant has extensive experience in representing trustees, debtors, creditors, and creditors' committees in bankruptcy proceedings before numerous Bankruptcy Courts, including the Southern and Eastern Districts of New York. As a result of Applicant's extensive experience, Applicant submits that the services it rendered in this case, as set forth below, were efficient, economical, and effective.

24. All of the services which Applicant necessarily performed for the Trustee and for the benefit of these estates are set forth in the time logs (the "Time Records") annexed hereto as **Exhibit C**. Applicant respectfully refers the Court to the Time Records for the details of all work performed for the Trustee and the estate. The Time Records list the services performed by

---

[9] As of the date of this Application, it is believed that there is approximately $711,296.00 Administrative Claims Funds remaining, which amount is far in excess of the amounts being sought in this Application, plus all

the members, associates, legal assistants, and paraprofessionals of the Applicant and set forth the days when such services were rendered, the nature of the services performed, the party who performed the services, and the time expended for such services. The Time Records are created contemporaneously with the rendition of the services and reflect Applicant's recorded time for the legal services rendered to or on behalf of the Trustee. During this Application Period, Applicant has expended a total of 621.20 hours in the rendering of legal services to the Trustee.

25.  Additionally, Applicant has annexed hereto as **Exhibit D**, a printout of the necessary disbursements Applicant has advanced on behalf of the Trustee during the Sixth Application Period.

26.  This Application contains a summary of the legal services which Applicant rendered during the Sixth Application Period. Due to the nature of the matters which have been addressed herein, Applicant has not attempted to describe each and every detail of each service rendered. Rather, so as not to unnecessarily burden this Court, which is familiar with these cases, Applicant has summarized the major categories in which services were rendered, the principal problems confronted, and the services rendered to resolve them.

27.  The rate for each of the persons referred to above is equal to the billing rate for such person's time for similar services rendered to clients in connection with bankruptcy and non-bankruptcy matters. Applicant believes that these rates constitute market rates and are equal to or less than the rates charged by professionals with similar experience. No premium or bonus is sought by this Application.

**PROFESSIONAL SERVICES RENDERED**

28.  During the Sixth Application Period, Applicant rendered a wide range of professional services which were substantial, necessary and beneficial to the Trustee, the

professional fee applications for this application period.

Debtors' estates and creditors, and other parties in interest. Applicant devoted substantial professional time and resources to address a variety of issues in the Debtors' substantively consolidated cases.

29. The presentation that follows below does not constitute a complete recitation of all services that were performed by Applicant during the Sixth Application Period but serves only to summarize those services of major importance which required Applicant's special attention, efforts and skill. Those services included, *inter alia*, the following:

   a. reviewed and analyzed numerous proofs of claim to determine the validity of the claims asserted;

   b. analyzed the Debtors' books and records in connection with the prosecution of preference and fraudulent conveyances adversary proceedings (the "Avoidance Actions");

   c. engaged in multiple interviews of Jaeson Birnbaum, the principal of the Debtors, in connection with the Trustee's prosecution of the Avoidance Actions;

   d. prepared tolling agreements and communicated with counsel for certain Avoidance Actions;

   e. negotiated a Fifth Claimed Cash Order (defined below) authorizing the Trustee's use of the Claimed Cash (defined below) in accordance with an approved budget;

   f. prepared and disseminated to the Interested Parties monthly litigation advance collection reports evidencing the Trustee's collections of such advances from January 1, 2022 through April 30, 2022;

   g. continued extensive discovery related to the adversary proceeding commenced against Carob Bean Realty Corp. II;

   h. prepared and served multiple 2004 subpoenas pursuant to the Order (the "Blanket Rule 2004 Order") authorizing the Trustee to conduct discovery of the Debtors and non-Debtor parties, including associated persons and registered agents, concerning the extent and nature of the Debtors' estates, including, but not limited to, acts, conduct, and property of the Debtors [ECF Doc. No. 211];

i. received and analyzed numerous payoff requests from litigants who received litigation advances from the Debtors and in conjunction with Ryniker, reviewed numerous books and records in connection with preparing and disseminating responses to those requests (the "Payoff Requests");

j. in connection with the Payoff Requests and under the terms of the Fourth Operations Order, successfully negotiated the amount due the estates pursuant to certain litigation advances.

k. prepared, filed and served the Trustee's motion establishing procedures governing the Avoidance Actions;

l. analyzed pre-discovery documents provided from certain defendants to the Avoidance Actions resulting in the preparation and filing of several Notice of Dismissals;

m. engaged in significant negotiations with counsel to Ken Birnbaum in an effort to reach a settlement;

n. prepared, filed and served the Fifth Application for Interim Professional Compensation for SilvermanAcampora LLP, as counsel to the Trustee;

o. reviewed the Motion to Pay Creditors filed by Michael R Perle (the "Perle Motion") on behalf of Pashman Stein Wader Hayden and performed extensive legal research relating to such claims;

p. reviewed the objection filed by Camille Raia to the Perle Motion and engaged in substantial negotiations with all parties in an effort to amicable resolve the matter, resulting in a settlement;

30. The following provides a more detailed description of certain of the services set-forth above and rendered by Applicant on behalf of the Trustee and these estates during the pendency of these cases. However, due to the complexities of these cases, this Application does not address all services performed by Applicant on behalf of Trustee and all parties are encouraged to review the Time Records for a more detailed description of services performed.

**Case Administration**

31. After an extensive review of the Debtors' books and records, the Trustee and his retained professionals determined that consolidation of the Debtors' estates was beneficical

because it served to streamline and reduce the administrative and closing costs of the estates, permitting the Trustee to make distributions to creditors without the need for costly (and likely futile) work to accurately reconcile the assets and liabilities of each of the Debtors.

32.     In this case, the Debtors were operated by management as one collective unit, often seemingly interchanging entities when dealing with creditors. The Debtors were known in the industry as "Cash4Cases" and shared a single account on Mighty, the industry's most widely used platform for tracking transactions. The Debtors' large secured creditors, all of which are Interested Parties, cross-collateralized their loans and clearly did not rely on the Debtors' corporate separateness when extending credit.

33.     Based on the foregoing, Applicant prepared and filed the Substantive Consolidation Motion, which was granted by the Court on November 16, 2021. [ECF Doc. No. 288].

**Asset Recovery**

34.     As outlined in the First Interim Fee Application, the Debtors were engaged in the business of funding non-recourse, pre-settlement litigation advances (the "Litigation Advances") to permit personal injury litigants during the duration of their pending litigation (the "Actions") to finance essential and basic living expenses and to subsidize unfunded medical costs associated with the prosecution of these Actions. As a result, the Debtors maintain liens against the proceeds of those litigations that result from trial or settlement (the "Litigation Proceeds"). Upon information and belief, as of the Filing Date there were approximately 930 cases comprising of approximately 2,263 advances, with a principal value of approximately 24.9 million dollars, and a full accreted value of approximately 52.3 million dollars.

35.     Since the Appointment Date, and because of Applicant's efforts, the Trustee has collected approximately over 22 million dollars under the approved settlement guidelines while

operating the Debtors' business on a limited basis upon the terms set forth in the Operations Order (the "Operations Order"), and as extended in subsequent operations order, including the Consent Order entered on November 29, 2021 extending the Operations Order to January 31, 2022 (the "Consent Order"). [ECF Doc. No. 293].

36. Due to the complexity of the Debtors' business operations and the massive amount of information pertaining to the Debtors' business operations and its ultimate bankruptcy filings, Applicant spent significant time assisting the Trustee in the overall administration of these estates and continues to assist the Trustee with administering the Debtors' cases.

**Fifth Claimed Cash Order**

37. In connection with the Operations Order and Consent Order, and in order to permit the Trustee to properly administer the Debtors' estates, the Trustee required continued use of cash which was subject to various types of claims by multiple parties in interest (the "Claimed Cash"). Accordingly, Applicant engaged in extensive negotiations with the various parties in interest in these cases regarding an order authorizing the Trustee's continued use of Claimed Cash, which included numerous conference calls, e-mail correspondence, and revisions to drafts of the proposed order (the "Fifth Claimed Cash Order").

38. As a result of Applicant's considerable efforts, the Trustee and all parties in interest agreed on a form of a Fifth Claimed Cash Order. Accordingly, Applicant prepared and filed on consent the Fifth Claimed Cash Order. On October 28, 2021, the Court entered the Fifth Claimed Cash Order. [ECF Doc. No. 278].

**Litigation**

The Carob Bean Adversary Proceeding

39. Upon Applicant's review of the Debtors' bankruptcy petition and schedules, books and records, and other available information, it was discovered that Cash4Cases, Inc., one

2800837v3 / 010001.756 / LMM

of the Debtors, transferred the amount of $280,000 to the law firm of Cutler Minikes & Adelman LLP (the "Carob Bean Transfer").

40. Upon Applicant's further investigation, it appeared that Liberty Bridge Properties, LLC ("LBP"), a non-debtor entity, as buyer, entered into a residential contract of sale for the purchase of certain real property known as and located at 134 East 38th Street, New York, New York (the "Real Property") with Carob Bean Realty Corp. II ("Carob Bean"), as seller. Applicant also learned that, the Carob Bean Transfer was fraudulently made by debtor Cash4Cases, Inc. for the benefit of LBP in connection with the downpayment due for the purchase of the Real Property.

41. Accordingly, in an effort to recovery the Carob Bean Transfer, Applicant, upon consultation with the Trustee, filed a complaint against Carob Bean and LBP seeking to set aside and recover the Carob Bean Transfer for the benefit of the Debtors' estates.

42. During the Sixth Application Period, Applicant, engaged in extensive discovery with Carob Bean and LBP and is currently engaged in litigating this action to final judgment.

Rule 2004 Examinations

43. In order to properly administered the Debtors' estates, Applicant prepared and served Bankruptcy Rule 2004 subpoenas on numerous witesses (collectively, the "Witnesses" and each a "Witness") pursuant to the Blanket 2004 Order. [ECF Doc. No. 211].

44. Applicant has successfully obtained the turnover of documents from the Witnesses and has reviewed those documents.

The Avoidance Actions

45. Since the Filing Date, the Trustee and his professionals have been diligently investigating (the "Investigation") the Debtors' financial affairs, including the Litigation Advances and the Litigation Proceeds, as well as potential causes of action of the Debtors' estates.

2800837v3 / 010001.756 / LMM

46. To aid in the Investigation, the Trustee filed numerous applications pursuant to Bankruptcy Rule 2004, including an application for the entry of an order authorizing the issuance of subpoenas for the production of documents and deposition testimony, and each such application has been granted by this Court. In addition, the Trustee has conducted informal discovery with numerous parties, including the Debtors' principal and all of the parties asserting interests in the Debtors' assets.

47. As part of the Investigation, the Trustee and his retained professionals engaged in extensive analysis of the Debtors' books and records to determine whether avoidable transfers to third parties took place. In addition to reviewing the Debtors' books and records, the Applicant also interviewed Jaeson Birnbaum, the principal of the Debtors, to review and analyze hundreds of transfers and potential transferees.

48. As a result of the aforementioned analysis, the Applicant commenced the Avoidance Actions pursuant to sections 105, 502, 544, 547, 548, 550 and 551 of the Bankruptcy Code and sections 273, 274, 275, 276 and 276-a of the NYDCL.

49. Since the commencement of the Avoidance Actions, Applicant has spent a substantial amout of time reviewing documents and speaking to counsel to various defendants in an effrot to resolve such actions. Applicant, as a result of meritourious defenses raised by certain defendants, has filed several dismissals of certain Avoidance Actions.

50. Applicant continues to prosecute the remaining Avoidance Actions for the benefit of the Debtors' estate.

**Claims Administration**

51. During the Sixth Application Period, Applicant has spent significant time analyzing the proofs of claim filed against the Debtors' estates. This analysis required, and continues to require, numerous discussions with the Trustee, the Trustee's other retained

professionals, as well as with counsel to certain creditors, including the Investor Creditors. Due to the complexity of all the various interests being asserted against the Debtors' estates, Applicant has also undertaken a substantial legal analysis process to better understand and reconcile such interests in anticipation of further litigation related to the Investor Claims Objections.

52.     As result of the aforementioned analysis, the Applicant prepared and filed the Investor Claims Objections to proofs of claim filed by: (i) David Berkowitz; (ii) Steven Goldstein; (iii) Susan R. Liebowitz; (iv) Kenneth Birnbaum; (v) Andrew Perry; (vi) Marci Rapaport; (vii) Ruth Gropper; (viii) Betty Rapaport; (ix) Eric Dinowitz; (x) Joan Dinowitz; (xi) Stephen Knaster; and (xii) Elaine Davis. After lengthy negotiations and discussions with several of the Investor Creditors and their counsel, Applicant reached a settlement resolving eight (8) of the Investor Claims Objections by allowing the claims of Andrew Perry, Marci Rapaport, Ruth Gropper, Betty Rapaport, Elaine Davis, Eric Dinowitz as general unsecured claims against the Debtors' estates.

53.     As referenced above, the foregoing tasks are merely a summary of the varied and significant services Applicant has provided to the Trustee during the Sixth Application Period. For a detailed description of the services provided by Applicant during the Sixth Application Period, all parties are encouraged to review the Time Records, which are annexed hereto as **Exhibit C**.

## LEGAL STANDARD

54.     Bankruptcy Code section 330(a)(1)(A) provides that the level of compensation that the court may award to a professional, including the trustee's attorney, should be "reasonable compensation for actual, necessary services rendered by the . . . attorney and by any paraprofessional person employed by any such person . . . ." 11 U.S.C. §330(a)(1)(A).

55.     In awarding compensation to retained professionals pursuant to Bankruptcy Code §330, courts take into account the cost of comparable non-bankruptcy services, among other factors. In re Busy Beaver Bldg. Center, Inc., 19 F.3d 833, 848 (3d Cir. 1994) ("[T]he principal purpose of the 1978 amendments to section 330 was to compensate bankruptcy attorneys at the same level as non-bankruptcy attorneys."). See also, H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 329 (1977) ("Bankruptcy specialists, however, if required to accept fees in all cases that are consistently lower than fees they could receive elsewhere, will not remain in the bankruptcy field."); 124 Cong. Rec. H11, 091-92 (daily ed. Sept. 28, 1978); §17, 408 (daily ed. Oct. 6, 1978).

56.     When reviewing fee applications, courts generally use the "lodestar" approach, pursuant to which the court first establishes a reasonable hourly rate of compensation based on the value of the services provided and the cost of comparable services, and then multiplies such rate by the reasonable number of compensable hours. *See Busy Beaver*, 19 F.3d at 849, n.21. *See also, In re Drexel Burnham Lambert Group, Inc.* 133 B.R. 13, 21—22 (Bankr. S.D.N.Y. 1991) (stating courts employ lodestar approach "with the 'strong presumption' that the lodestar product is reasonable under §330") (citations omitted); *In re West End Fin. Advisors, LLC,* 2012 Bankr. LEXIS 3045, *12 (Bankr. S.D.N.Y. July 12, 2012) ("The rules that govern fee awards and time record keeping in bankruptcy mirror those that apply in non-bankruptcy cases. Courts outside of bankruptcy generally apply the 'lodestar' method . . . .") (citations omitted); *In re Cena's Fine Furniture, Inc.*, 109 B.R. 575, 581 (E.D.N.Y. 1990).

57.     When determining whether services for which compensation is sought were reasonable, courts should only disallow fees where "a [c]ourt is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive." In re Drexel, 133 B.R. at 23. See also, Nicholas v. Oren (In re

Nicholas), 2011 Bankr. LEXIS 4498, *16 (Bankr. E.D.N.Y. 2011) ("[C]ourts are 'not to penalize attorneys by viewing the efforts of counsel with the benefit of '20/20 hindsight.'" (quoting In re Drexel, 133 B.R. at 23)).

58.     Additionally, Bankruptcy Code section 503(b) provides that, after notice and a hearing, administrative expenses can be awarded and paid including "compensation and reimbursement awarded under section 330(a)." 11 U.S.C. §503(b)(3).

59.     Bankruptcy Code section 504 prohibits professional persons receiving compensation under Bankruptcy Code section 503 from sharing or agreeing to share: "(1) any such compensation or reimbursement with another person; or (2) any compensation or reimbursement received by another person under such sections." 11 U.S.C. §504(a).

60.     All services for which compensation and reimbursement of expenses are requested by Applicant were performed for and on behalf of the Trustee and the Debtors' estates. No agreement or understanding exists between Applicant and any other person for the sharing of compensation to be received for the services rendered in connection with Applicant's representation of the Debtor, and no action prohibited by Bankruptcy Code section 504 has been made by Applicant. Annexed hereto as **Exhibit E** is a Certification required by the Guidelines.

61.     Applicant respectfully requests that this Court consider that the services required to be performed have been efficiently performed with effective results. Applicant has expended substantial time rendering professional services to the Trustee in furtherance of the rights and interests of the Debtors' estates.

62.     No previous application or motion for the relief requested herein has been made to this or any other Court.

2800837v3 / 010001.756 / LMM

## CONCLUSION

63. It is impracticable to set forth in a fee application a detailed description of each and every service rendered to the Trustee. Applicant, however, believes that this Application appropriately sets forth the more significant matters handled and provides this Court with a comprehensive overview of the scope of the services rendered. Thus, Applicant submits the fees sought herein are reasonable and the services rendered were necessary, effective, efficient and economical.

64. Based on the foregoing, Applicant respectfully requests that this Application for interim allowance and payment of fees and reimbursement of expenses be granted in all respects.

65. As set forth above, Applicant has provided services reasonably valued at $237,217.00. Applicant has expended 621.20 hours on behalf of the Trustee and the estate on this matter. The blended hourly rate for time incurred by attorneys, paralegals, legal assistants and law clerks equals approximately $381.87 per hour. (See Summary Sheet).

66. Additionally, Applicant seeks reimbursement of disbursements incurred in the sum of $10,217.32 during the Sixth Application Period.

67. No agreement or understanding exists between Applicant and any other person for the sharing of compensation received for services rendered in connection with the representation of the Trustee.

68. No division or compensation will be made by Applicant and no action prohibited by §504 of the Bankruptcy Code has been made or will be made by Applicant.

69. No other application has been submitted to this Court for any of the relief requested herein.

**WHEREFORE,** SilvermanAcampora seeks the entry of an order (i) approving its sixth interim allowance and award of compensation for the professional services rendered as attorneys for the Trustee for the Sixth Application Period in the amount of Two Hundred Thirty-Seven Thousand Two Hundred Seventeen and 00/100 ($237,217.00) Dollars; (ii) authorizing payment for reimbursement of actual and necessary expenses incurred by SilvermanAcampora during the Sixth Application Period in connection with the rendering of its services in the amount of Ten Thousand Two Hundred Seventeen and 32/100 ($10,217.32) Dollars; (iii) authorizing payment of fees in the amount of Two Hundred Fourteen Thousand and 00/100 ($214,000.00) Dollars, which amount is net the Current Holdback of Twent Three Thousand Two Hundred Seventeen and 00/100 ($23,217.00) Dollars; (iv) authorizing payment of the Prior Holdback Payment in the amount of Eighty-Six Thousand and 00/100 ($86,000.00) Dollars, leaving an outstanding holdback in the amount of Forty-Four Thousand Four Hundred Seventy and 33/100 ($44,470.33) Dollars, subject to approval of this Court at a later date; (iv) seeking a total payment of fees in the amount of Three Hundred Thousand and 00/100 ($300,000.00) Dollars plus expenses, for a total payment at this time of Three Hundred Ten Thousand Two Hundred Seventeen and 32/100 ($310,217.32) Dollars; and (v) such other, further, and different relief as this Court may deem just and proper.

Dated: Jericho, New York
       May 20, 2022

                                        **SILVERMANACAMPORA LLP**
                                        Counsel to Kenneth P. Silverman, Esq.,
                                          the Chapter 7 Trustee

                                        By: *s/Justin S. Krell*
                                             Justin S. Krell
                                        Member of the Firm
                                        100 Jericho Quadrangle, Suite 300
                                        Jericho, New York 11753
                                        (516) 479-6300