UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:                                                          Chapter 7

LIBERTY BRIDGE CAPITAL MANAGEMENT
GP, LLC CASH4CASES, INC., *et al.*,
                                                                Case No.: 20-10009(JPM)
                                                                (Jointly Administered)
                    Debtor.
------------------------------------------------------------x

## OPINION AND ORDER ON VARIOUS FILINGS OF SEHRA WAHEED

*A P P E A R A N C E S:*

**SEHRA WAHEED**
*Self, pro se*
18 West 48th Street
New York, NY 10036
By:    Sehra Waheed


**RIMÔN PC**
*Counsel for Chapter 7 Trustee Kenneth P. Silverman*
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
By:    Brian Powers
       David J. Mahoney

**COLE SCHOTZ P.C.**
*Counsel for US Claims Capital, LLC*
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
By:    Mark Tsukerman

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**[1]

Before the Court are the *Motion To Request Honorable Judge Mastando To Grant Permission To Sue Trustee Kenneth P. Silverman, et al.* (the "**Motion to Sue**") [Doc. 411], *Application In Support Of Order To Show Cause* (the "**OSC Application**") [Doc. 414], and *Memorandum Of Law In Support Of Plaintiffs Motion For Summary Judgment* [Doc. 415], (the "**Motion for Summary Judgment**," together with the Motion to Sue and the OSC Application, the "**Waheed Filings**") filed by Sehra Waheed (the "**Movant**"). The Waheed Filings all generally seek damages from the Chapter 7 trustee (the "**Trustee**") and related parties for attempting to enforce a certain litigation funding agreement (the "**Agreement**") between Movant and Cash4Cases (the "**Debtor**"), one of the Chapter 7 debtors in this case. [*See* Doc. 411, Motion to Sue, pp. 22–25; Doc. 415, Motion for Summary Judgment, pp. 14–15]. Movant asserts that she is entitled to damages because the Agreement was fraudulent. [*Id.*].

Filed in response to the Waheed Filings are the Trustee's *Response to Various Filings of Sehra Waheed* (the "**Trustee Response**") [Doc. 417] and the *Joinder to Trustee's Response to Various Filings of Sehra Waheed* filed by US Claims Capital, LLC ("**US Claims**") [Doc. 418] (the "**US Claims Joinder**"). [*See generally* Doc. 417 & Doc. 418]. The Trustee Response and US Claims Joinder both assert that the Waheed Filings should be treated as a "*Barton* motion" pursuant to the doctrine that was established in *Barton v. Barbour*, and that is applied in the Second Circuit to claims against bankruptcy trustees. *See Barton v. Barbour,* 104 U.S. 126 (1881); *Vass v. Conron*

---

[1] Unless otherwise specified, references to "[Doc. __]" are to filings entered on the docket in the bankruptcy case *In re: Liberty Bridge Capital Management GP, LLC Cash4Cases, Inc., et al.*, Case No. 20-10009 (Jan. 3, 2020).

References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure. References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

1

*Bros. Co.*, 59 F.2d 969, 970 (2d Cir. 1932). The Trustee and US Claims further argue that the putative *Barton* motion should be denied. [*See* Trustee Response, Doc. 417, ¶¶ 21–28; US Claims Joinder, Doc. 418, ¶ 16]

After careful consideration, and for the reasons set forth below, the Motion to Sue, the OSC Application, and the Motion for Summary Judgment are denied.

## BACKGROUND

Between October 23, 2024 and December 27, 2024, Movant filed several pleadings with this Court seeking: (1) permission to commence suit against, *inter alia*, the Trustee, SilvermanAcampora LLP ("**Counsel for Trustee**"), and US Claims for their attempt to collect the amount Movant purportedly owes Debtor under the Agreement; and (2) monetary damages from each of these parties. [Trustee Response, Doc. 417, ¶ 18]. Movant alleges that the Trustee's failure to remove an "illegal lien" attached to her state court case pursuant to the Agreement has prevented her from receiving additional litigation funding. [Motion to Sue, Doc. 411, p. 11]. Movant also alleges that the Agreement with Debtor was fraudulent because Debtor's former CEO, Jaeson Birnbaum, pleaded guilty to charges of fraudulently selling and granting security interests in funding agreements that "had already been sold and/or pledged to other buyers and lenders." [Motion to Sue, Doc. 411, pp. 9–10; US Claims Joinder, Doc. 418, ¶ 8].

Because of Birnbaum's fraud, Debtor filed for Chapter 7 bankruptcy (the "**Bankruptcy Case**") on January 3, 2020. [*See* Doc. 1, Chapter 7 petition]. Prior to the Bankruptcy Case, Debtor and its affiliates were in the business of "providing non-recourse legal funding to plaintiffs involved in personal injury claims." [*See* US Claims Joinder, Doc. 418, at ¶ 1]. The purpose of this type of funding is to help personal-injury victims and lawsuit plaintiffs "pay expenses, manage cash flow, and secure medical care while awaiting a ruling in their case." [*Id.*] These so-called

2

funding agreements were not loans, but rather Debtor purchased a partial ownership interest in any recovery on the plaintiffs' respective claims. [Trustee Response, Doc. 417, ¶ 1]. Birnbaum, the Debtor, and Debtor's affiliates then "sold hundreds of funding agreements they had originated to buyers on the secondary market, including US Claims." [US Claims Joinder, Doc. 418, ¶ 7].

On October 24, 2018, Debtor executed the Agreement with Movant in connection with her pending medical malpractice litigation in New York County Supreme Court. [Trustee Response, Doc. 417, ¶ 2]. Debtor agreed to advance $19,223.00 in litigation funds to Movant in exchange for a portion of her interest in any recovery that she might receive via settlement or judgment. [*See* Agreement, Doc. 417, Ex. A, ¶ 5]. Debtor also took the further step of filing a UCC-1 statement (the "**Financing Statement**"), which put other litigation advance companies on notice that Debtor had an interest in Movant's potential recovery in her state court action. [Trustee Response, Doc. 417, ¶ 3].

Shortly before the Debtor and affiliates filed for bankruptcy, it was discovered that "Birnbaum and the Debtors were fraudulently double- and triple-selling and/or pledging their funding agreements to investors." [*Id*. at ¶ 8]. During the Bankruptcy Case, the victims of said fraud became parties in interest in the bankruptcy (the "**Interested Parties**") with various competing claims. [*Id*. at ¶ 11]. On January 3, 2020, the Trustee was appointed to Debtor's Chapter 7 case. [*Id*. at p. 3]. Ultimately, the Trustee and the Interested Parties reached a global settlement agreement (the "**Global Settlement**"). [*See* Doc. 270, *Motion to Approve Compromise*; Doc. 290, *Order Approving Trustee's Motion Seeking Approval of a Global Settlement Agreement*]. The Global Settlement requires the Trustee to "liquidate and maximize the value of the Debtors' assets," including collection of interests in the funding agreements, in order to distribute the funds among the Interested Parties. [US Claims Joinder, Doc. 418, ¶¶ 12–13].

3

Movant alleges that Debtor's interest in her potential recovery—which she refers to as a "lien"—has caused her severe hardship and has precluded her from receiving additional litigation funds. [Motion to Sue, Doc. 411, p. 20]. On January 21, 2020, Movant contacted the Trustee seeking a payoff of amounts due to Debtor pursuant to the Agreement[2] in order to obtain additional funding from another litigation advance company. [Trustee Response, Doc. 417, ¶ 11]. The Trustee engaged with another litigation funding company to determine whether a "payoff" agreement could be reached, whereby the other company would "buy out" Debtor's interest in the litigation recovery while advancing further funds to Movant. [*Id.*; *see also id.* at fn. 5].

Since then, Movant contacted the Trustee from time to time seeking an updated payoff, and each time the Trustee issued a payoff statement and engaged with various litigation funding companies "to determine whether an agreement could be reached." [*Id.* at ¶ 12]. On May 25, 2023, the Court entered an order approving retention of US Claims as the Trustee's sub-servicer to collect on any unpaid funding agreements. [*See generally* Doc. 394]. To date, the Trustee has resolved the Debtors' interest in approximately 700 of these funding agreements.[3] [Trustee Response, Doc. 417, ¶ 10].

---

[2]    Pursuant to the Agreement, in return for the $19,223.00, Movant would owe $22,939.90 to Debtor if she repaid the Debt within six months of executing the Agreement (on April 24, 2019). [*See* Agreement, Doc. 417, Ex. A, p. 3]. The amount owed, if unpaid at the end of six months, would increase at an annual compound interest rate of 42.41%, with Debtor owing $32,668.73 at eighteen (18) months, $46,523.56 at thirty (30) months, and so on until the amount owed is paid in full. [*Id.*]. By the time US Claims sought to recover from Movant on February 23, 2024, she owed $167,464.45 under the Agreement. [Motion to Sue, Doc. 411, pp. 12–13]. After ongoing discussion, the Trustee expressed to Movant that the Trustee, on behalf of the estate, would be willing to settle the amount Movant owed on the Agreement for $30,000. [*Id.* at p. 7]. No settlement was ever reached, and the Trustee asserts that "[i]n or about September 2024, US Claims provided Movant with written confirmation that the Debtors' estates and the Trustee had released Movant from Movant's Funding Agreement and the related interest in her Personal Injury Recovery." [Trustee Response, Doc. 417, ¶ 14].

[3]    It was estimated early in the Bankruptcy Case that "as of the Filing Date there were over 400 active Actions with approximately 2,100 outstanding Litigation Advances with a total collectable value, at par, of approximately 25 million dollars and, together with full accreted interest a value in excess of 52 million dollars . . ." [*See* Doc. 23, ¶ 9].

4

On April 15, 2024, the Financing Statement lapsed. [*See* Trustee Response, Doc. 417, Ex. C]. Nevertheless, and despite these interactions with the Trustee, Movant asserts she was never able to obtain new litigation funding. [Motion to Sue, Doc. 411, p. 6].

On October 23, 2024, Movant filed the Motion to Sue. [*See* Doc. 411]. The OSC Application was filed on November 8, 2024. [*See* Doc. 414]. Finally, Movant filed the Motion for Summary Judgment on December 27, 2024. [*See* Doc. 415]. On January 16, 2025, the Court held a hearing on the Waheed Filings. [*See* Doc. 416]. Following the hearing, on January 31, 2025, Counsel for Trustee filed the Trustee Response. [*See* Doc. 417]. On that same day, US Claims filed the US Claims Joinder. [*See* Doc. 418].

### THE PARTIES' ARGUMENTS

The Motion to Sue and OSC Application are both styled as a complaint and appear to seek the same relief. [*See* Motion to Sue, Doc. 411, pp. 22–25; OSC Application, Doc. 414, pp. 28–32]. Movant names the Trustee, Trustee's counsel, US Claims, and the Debtor as "defendants" (hereinafter the "**Purported Defendants**"). [Motion to Sue, Doc. 411, p. 1]. Movant seeks to obtain damages from the Purported Defendants for, *inter alia*, fraudulent inducement, negligent misrepresentation, unjust enrichment, tortious interference, and deceptive business practices. [*Id.* at p. 22]. Shortly after filing the Motion to Sue and the OSC Application, Movant filed the Motion for Summary Judgment, which argues that "[a]s there are no genuine issues of material fact, the Court should grant my Motion for Summary Judgment and award damages against the Debtor's Estate and all named Defendants in the caption listed above." [Motion for Summary Judgment, Doc. 415, p. 2]. Movant "respectfully requests that the Court grant [the] Motion for Summary Judgment and award damages against the Debtor's Estate in the amount of $1,000,000, plus any accrued interest and court costs. [*Id.* at p. 14].

5

The Trustee argues the Court should treat the Waheed Filings collectively as a "*Barton* motion." [Trustee Response, Doc. 417, ¶ 25]. This is based on the holding of the United States Supreme Court in *Barton v. Barbour* that a lawsuit may not be brought against a receiver without first attaining leave to sue from the court that appointed the receiver. [Trustee Response, Doc. 417, ¶ 21]; *see also Barton v. Barbour,* 104 U.S. 126, 136–37, 26 L.Ed. 672 (1881). The Trustee states that the Second Circuit has extended the holding in *Barton* (the "***Barton* Doctrine**") to bankruptcy trustees. [*Id.* at ¶ 22] (citing *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012)). The Trustee also notes that "[c]ourts have routinely applied the *Barton* Doctrine broadly to include parties other than a receiver or trustee, such as the trustee's retained professionals." [*Id.* at p. 7] (citing *In re Ditech Holding Corp.*, 2021 WL 3716398 (Bankr. S.D.N.Y. Aug. 20, 2021); *Peia v. Coan*, 2006 WL 798873 (D. Conn. Mar.23, 2006)).

The Trustee asserts that the Trustee and related professionals are protected under the *Barton* Doctrine and that their conduct does not fit any of the exceptions thereto. [Trustee Response, Doc. 417, ¶¶ 26–28]. "Movant alleges the Trustee and his professionals were attempting to enforce an unenforceable contract to Movant's detriment." [*Id.* at ¶ 20]. The Trustee argues that "a trustee's actions are protected by the *Barton* Doctrine if the trustee makes a mistake in business judgment while carrying out his statutory duties," although "a trustee may be personally liable for negligent or willful violations of [] fiduciary duties." [*Id.* at ¶¶ 26–27] (citing *In re Gorski*, 766 F.2d 723 (2d Cir. 1985); *In re Varela*, 530 B.R. 573 (Bankr. E.D.N.Y. 2015)). The Trustee asserts:

> Here, the Trustee's conduct, as alleged by Movant does not fit within the narrow exception to the *Barton* Doctrine []. Moreover, the protection of the *Barton* Doctrine extends to the actions taken by counsel for the Trustee and the retained servicer to the Debtors' estate, [Counsel for Trustee] and US Claims, respectively.

6

[Trustee Response, Doc. 417, ¶ 28]. The Trustee argues with respect to the attempts to enforce the Agreement:

> Birnbaum's fraud had nothing to do with Movant, who entered into a legal[ly] binding Funding Agreement and actually received the [a]dvance that she was promised . . . Birnbaum's deceit toward investors does not affect the enforceability of the Funding Agreements executed by the Debtors and therefore does not affect the enforceability of the Funding Agreements in the Trustee's administration of the Debtors' estates.

[Trustee Response, Doc. 417, ¶ 32].

US Claims asserts that "[a]s aptly set forth in the Trustee[] Response, the Court should deny Ms. Waheed's motion as barred by the *Barton* doctrine. At all times in US Claims' limited dealings with Ms. Waheed, US Claims acted appropriately pursuant to the Trustee's direction." [US Claims Joinder, Doc. 418, ¶ 16].

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

"[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir. 2006); *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir. 2006).

Applying a liberal interpretation of the factual allegations presented and the relief sought by Movant, the Court agrees with the Trustee that the Waheed Filings should be construed as a *Barton* motion. As the Trustee discussed in the Trustee Response, the Second Circuit has held that

7

*Barton* applies to bankruptcy trustees. *See Vass*, 59 F.2d at 970 ("[J]udgment against a receiver . . . does not lie at all, unless by leave of the court which appoints the receiver. . . . We have ourselves so held as to bankruptcy receivers); *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996) ("[T]he court that appointed the trustee has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties. A well-recognized line of cases starting with [*Barton*] extends such protection by requiring leave of the appointing court before a suit may go forward . . .); *Sec. Investor Prot. Corp.*, 460 B.R. at 116 ("Needless to say, the [*Barton*] doctrine has been observed in the post-receivership context and has been extended to bankruptcy trustees"). [*See also* Trustee Response, Doc. 417, ¶ 22].

Thus, a party in interest must obtain court approval before suing the Trustee, which is exactly the relief sought in the Motion to Sue. Movant styled the Motion to Sue as a "Motion to Request Honorable Judge Mastando to Grant Permission to Sue Trustee Kenneth P. Silverman, [Counsel for Trustee], US Claims, LLC . . . ." [Motion to Sue, Doc. 411, p. 1].

The Court also agrees with the Trustee and US Claims that the Waheed Filings—construed as a *Barton* motion—should be denied. Specifically, the Court agrees that "the Trustee's conduct, as alleged by Movant, does not fit within the narrow exception to the *Barton* Doctrine." [Trustee Response, Doc. 417, ¶ 28]. Movant asserts that "[a]ll named defendants breached their duty in a way so egregious that it rises to the level of wantonness," [Motion to Sue, Doc. 411, p. 23], and that "Co-Defendants had a duty to disclose material information to me and that they failed to do so[. I]nstead they aided and abetted fraud to be unjustly enriched at my expense," [*id.* at p. 24].

The cases that the Trustee cites regarding instances of exceptions to *Barton* involve misconduct such as negligent or willful breach of fiduciary duties, *In re Gorski*, 766 F.2d 723, 727 (2d Cir. 1985), or *ultra vires* actions, *i.e.*, conduct that falls outside the scope of duties to be carried

8

out by the Trustee, *In re McKenzie*, 716 F.3d 404, (6th Cir. 2013) ("[T]he question in such cases is whether the trustee was acting in his official capacity and within the scope of his authority.").

Section 704(a) of the Bankruptcy Code, which lists the duties of a chapter 7 trustee, states in relevant part that "(a) [t]he trustee shall (1) collect and reduce to money the property of the estate for which such trustee serves . . . ." 11 U.S.C. § 704(a)(1). As set forth in the US Claims Joinder, the Global Settlement requires the Trustee and US Claims as sub-servicing agent to "liquidate and maximize the value of the Debtors' assets." [US Claims Joinder, Doc. 418, ¶ 13]. This includes "the continued servicing, monitoring, and collection with respect to the Debtors' outstanding portfolio of funding agreements." [*Id.*].

Thus, the Court finds that the Trustee, in seeking to settle the claim that the estate has against Movant under the Agreement, was in fact carrying out the Trustee's fiduciary duty under Section 704(a)(1) and was acting within the scope of the Trustee's authority. This conduct was pursuant to the Trustee's statutory duty to "collect and reduce to money the property of the estate," and it was the same conduct Trustee had already engaged in on behalf of the estate in approximately seven-hundred other occasions regarding similar funding agreements. [Trustee Response, Doc. 417, ¶ 10]. Accordingly, the actions of the Trustee and US Claims with respect to Movant and the Agreement are protected by the *Barton* doctrine, and the Waheed Filings—interpreted as a *Barton* motion—are denied.

9

## CONCLUSION

For the foregoing reasons,

(1) the Motion to Sue found at Docket No. 411 is DENIED; and

(2) the OSC Application found at Docket No. 414 is DENIED; and

(3) the Motion for Summary Judgment found at Docket No. 415 is DENIED.

**IT IS SO ORDERED.**

Dated: April 8, 2025
New York, New York

/S/ John P. Mastando III
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE

10